CHIPMAN et al., Appellants, v. EMERIC, Respondent.

At common law there was no forfeiture of an estate for years, for the non-payment of rent, nor for the commission of waste.

By the Statute of Gloucester, 6 Ed. 1, the remedy of forfeiture was given for waste, and it was expressly confined to the place wherein the waste was committed.

The Statute of California, confines the remedy to the recovery of treble damages.

By the 13th section of the act, concerning forcible entries and unlawful detainers, it was the intention of the legislature to make the non-payment of rent work a forfeiture of the estate of the tenant. But to effect this, the rent must be demanded on the day it becomes due, and at a late hour of the day.

Where the record shows no demand of the rent, there can be no forfeiture.

APPEAL from the District Court of the Third Judicial District.

This was a proceeding in forcible detainer, commenced before a Justice of the Peace, in the township and county of Contra Costa.

The plaintiffs say, that on the 21st February, 1851, Antonia Maria Peralta, leased to Jose Dessassier and Jose Maria Payot, the tract of land known as the Encinal San Antonio, part of the Ranch known as the Ranch San Antonio, and containing about 3000 acres; that about the —— day of June, 1851, the said Dessassier sold his interest in said lease, to the above-named defendant Emeric, and J. M. Payot, and that on the 20th October, 1851, the said Peralta gave his written consent to the said transfer to Emeric, which is endorsed on the said lease; that on 21st October, the said J. M. Payot, transferred to the said Emeric, his interest in said lease; that on the 23d October, 1851, the said Peralta transferred to the said plaintiffs, Chipman and Aughenbaugh, the said lease of the said Encinal, which transfer is endorsed upon said lease; that said Payot and Dessassier, gave to said Peralta a written lease or agreement for said Encinal; of which with the endorsements profert is now made.

That on the 22d October, 1851, the plaintiffs purchased by deed of the said Peralta the said Encinal, and are now the legal and sole owners of the same, and make profert of the said deed; that said Payot does not claim any right under the said lease,

18

nor has he any possession of the said premises, and said Emeric has had the sole possession thereof, and has claimed the sole right under the said lease, and in the said premises, since the 20th October, 1851; that he went into possession under the said lease and transfer to him, made by said Dessassier and Payot as aforesaid, and is still in possession and occupancy of the same; and plaintiffs say, that said defendant holds over the said premises contrary to the conditions and covenants of the lease under which he holds, and after rent has become due, according to the terms thereof, and has remained unpaid for the space of three days.

That plaintiffs, about the 20th April, 1852, and also about the 25th March, 1852, and after defendant wrongfully held over as above stated, made a demand in writing of said defendant, that he should deliver the possession of the premises to the plaintiffs; but defendant has refused to quit the possession thereof, and has refused and still refuses to pay rent for the same. Plaintiffs therefore pray that defendant may be compelled to pay the amount of rent due, $280; and damages for holding over; and for a writ of restitution for the said premises.

The defendant's answer admits possession of the premises; the lease of 21st February, from Peralta to Payot and Dessassier; the transfers to him by the latter on the 20th October, and by the former on the 21st October, 1851; that on the 23d October, said Peralta transferred to the plaintiffs the said lease; and that defendant has had, and still holds the possession, and claims the sole right to the said premises under said lease; and says that he went into possession under the lease from Peralta, and the transfers thereof; and denies that he holds over the premises contrary to the conditions and covenants thereof. And further, says that the plaintiffs have been, and are undertenants of this defendant, of a certain portion of the said Encinal, rendering rent therefor, and for the use and occupation thereof, at the rate of $80 per month; that on the 19th April last, there was due from the plaintiffs to the defendant, $240 of said rent, for the months of February, March, and April; that defendant, on the 19th April last, tendered to the plaintiffs full receipts and acquittances for the said $240, so due from them to him; and

$140 in cash, in full for the rent due from him to the plaintiffs, up to the 21st April last; and that on the 1st May last, plaintiffs were indebted to him $80 for rent, due from them to him as undertenants as aforesaid, for the month of May; and that defendant on the 22d May, tendered to the plaintiffs full receipts for the same, and also $60 in full for said rent due the 21st May, from the defendant to the plaintiffs. And denies that there was due to the plaintiffs the rent ($420) claimed by them; that $140, part of said sum of $420, was not due till the 21st instant, several days after the commencement of this suit; and said defendant now tenders and brings into court, the said receipts and acquittances, and the sums of money heretofore tendered to the plaintiffs as aforesaid; and also tenders and brings into court the sum of $280, in full satisfaction of the rent due the plaintiffs; and prays judgment against the plaintiffs, and denies all allegations of the complaint not admitted.

The Justice found the defendant not guilty of unlawful detainer, and that plaintiffs pay the costs. Plaintiffs appealed to the District Court; and on the 20th November, 1852, the cause was referred by consent of counsel, with authority to the referee to try all issues, whether of law or fact, between the parties, and to report judgments thereon, to be entered in term or in vacation as the judgments of the court, and with like effect; reserving the right to appeal to the Supreme Court.

The above reference included other issues between the parties, founded on the lease of Peralta to Dessassier and Payot, and the transfers as set forth in the complaint and answer, one of which was for waste, charged in the complaint as committed on the 16th October, 1851, and at divers other times, by the defendant, in cutting down 500 oak trees on the said premises, the property of the plaintiffs, of the value of $8000. The defendant admitted the cutting of the trees, &c., but justified under the lease assigned to him as set forth in his answer; and avers that the lease was made in view to the use of the timber for making charcoal, and that the premises were so used by his assignors, with the knowledge of Peralta, the original lessor, under whom plaintiffs claim. Proof of the above facts was objected to, on the ground that it would contradict the lease from Peralta to

Dessassier and Payot, but was admitted by the referee; and plaintiffs counsel excepted. The knowledge and assent of Peralta were fully proved by himself.

The lease from Peralta to Payot and Dessassier, was originally written in Spanish, a translation of which is placed upon the record, and is as follows:—

"We, the undersigned, Don Antonio Maria Peralta, Don Jose Maria Payot, and Don Jose Dessassier, say that we have made the following contract to lease a property called the Encinal, belonging to the Ranch called San Antonio, under the following conditions:—

"1st. I, Don Antonio Maria Peralta, say that I lease to Don J. M. Payot and Don Jose Dessassier, the property that is on my ranch, called Encinal, which belongs to me, for the term of six years, for both contracting parties; it being understood that the first year they will have the use of the property without paying any rent, but at the end of said year, they will pay $1680, for each year of the remaining five, which amount shall be paid monthly during the already mentioned five years, giving me, at the end of each month, the sum of $140, which corresponds to a month from $1680, of the first of the five years; it will successively be observed the same, until the said property of Encinal shall be delivered to me, which shall be at the end of six years.

"2d. We, the above mentioned Don Jose Maria Payot and Don Jose Dessassier shall take possession of the said property, called the Encinal, for the term already stipulated, of six years, it being understood that during the first year the property is given to us without the payment of rent, and for the five remaining years we shall pay the sum of $1680, as already mentioned in the first clause. In the first clause we both bind ourselves to pay '*mon comune in solidum*' the $140, which is the monthly sum that corresponds to the amount of $1680 yearly, which is the total amount of the five years, as is already expressed in the first clause, until the end of the six years; and it will be successively observed the same.

"3d. The lessees bind themselves to fulfil all that has been stipulated in the first clause, promising that in case of our failing

to fulfil our obligation, we give to Don A. M. Peralta his right, without diminution, I, and my partner, and shall have no right to any reclamation whatever.

"4th. In the same manner, we bind ourselves to allow Mr. Peralta to cultivate all the land he may require, as also any of his brothers; we also give him the right to take from said property all the wood he may want for home consumption, and also for wintering his cattle.

"5th. The lessees both consent to our not being able to transfer this lease to any person, unless it be with the consent of Don Antonia Maria Peralta; and in case we should do it, we both shall be responsible for all damages against the interests of said Antonio Maria Peralta.

"6th. We bind ourselves to leave to Don A. M. Peralta, at the end of the six years of this contract, all the benefit of the embarcadero or wharf that we bind ourselves to make on taking possession of said property, houses, yards, canals, &c., and in fine, all the improvements that may exist, we having no right to any compensation.

"7th. We pay and give to Don A. M. Peralta $240 in advance, on account of the rent, it being understood that said sum so advanced, shall be deducted at the time of our returning this contract, or rather in six years, which is the time when it shall be cancelled.

"8th. We, the undersigned, say, that we bind ourselves in due form to fulfil all the foregoing stipulations, and we bind ourselves, with all goods and chattels now belonging or which may belong to us, and so that it may be binding, we give to this contract the form of a public document as passed before the authority, we renouncing all laws and rights in our favor; and for better security, we both sign two of them of the same tenor and date.

"Messrs. J. M. Payot and Jose Dessassier can maintain on the said leased property, all the horses, mules, and cattle, that they may want for their use, as also they may maintain as many as fifty milch cows. Don A. M. Peralta also allows to open a trench or canal from the creeks that are found on the eastern part of the property, leaving the said gentleman all the right

that corresponds to him, to indicate to us the point most convenient to him.

"Signed,      "G. M. Payot,

"Witnesses,                   "Ant. Mar. Peralta,

"Francis A. Ireans,      "Jose Dessassier.

"Jose Garcia Alaraus.

" San Antonio, 21st February, 1851."

The referee reported that, at the commencement of the action, the sum of $280 was, and still is, due from defendant to plaintiffs, and that the plaintiffs were not entitled to have restitution of the premises referred to in the complaint; and that plaintiffs are entitled to judgment against defendant only for said sum, with interest from 21st of April, 1852, and costs.   Dated, January 15th, 1853.

Plaintiffs, by their attorney, appealed from the above judgment, so far as forfeiture of the leased premises and restitution thereof is denied, and also as to the refusal to give treble the damages, the same having been duly demanded by the plaintiffs.

*Chipman*, for appellants.

The finding of the rent due, by the referee, and costs, is conclusive against any tender defendant may have pleaded, and we are entitled to *restoration of the premises*.

After the rent remained due three days, plaintiffs, March 25th, 1852, notified defendant to quit, the notice following the words of the statute, and alleging a breach of covenants generally.

April 17th, a second notice was given to quit, for breach of covenants and non-payment of rent, when defendant first tendered $140, with some receipts for rent claimed by him to be due from plaintiffs.   If such rents as were claimed by defendant, were due to him, the acquittances were no tender; coin only, and not paper, debts, notes, &c., is good as a tender.

But no such note was due; the lease to plaintiffs, from the assignees of the defendant, of January 23d, 1851, guaranteed a certain piece of ground in said Encinal, "*free from all incumbrances.*"   In this covenant, the lessors and their assignee, the defendant, failed, as there were prior incumbrances, two leases

from Peralta, which were retained till transferred by Peralta to plaintiffs in October, 1851.

Can the defendant assume an indebtedness, which is totally denied, and apply it, not as a set-off, but as a legal tender, and this upon a debt due the plaintiffs and not denied?

Our purchase of the fee, October 1851, from our landlord, merged the lesser title, ended the lease, and stopped the rent. But if the rent was apportioned, and the plaintiffs charged in accordance with the respective interests under the lease of January 23d, 1851, it could not be used as a tender.

The payment of $280 with costs was withdrawn ; if good as a tender it was not *kept good*.

Under the statute, it is an unlawful holding, "where any holder shall hold over after the rent shall be due, and remain unpaid for the space of three days;" and the justice, after judgment, is directed to give a writ of restitution, as in other cases. See sect. 13, p. 420, statutes of 1850. And if restitution is not to follow the breach of defendant's covenants, and if a tenant may commit waste, and pay no rent, and continue to enjoy, &c., the summary remedy sought to be provided by the statute is of little avail.

The provisions of the statute are entirely independent of the common law, and the directions in the proceeding are plain, without any reference thereto; no provision requires a clause of re-entry, nor demand before sunset on the day the rent falls due, &c.

If the proceedings are substantially correct, no objections to form will be regarded; 2 Bibb, 431; Barrett *v.* Chitwood.

A tenant holding over, even on a parol lease, is not *entitled* to notice to quit before the emanation of the warrant; 4 Bibb, 524; 11 Wend. 616; 6 Hill, 507.

By the same reasoning, a tenant holding over contrary to any other provision of the law, is entitled to notice, before a warrant can emanate, and writ of restitution issue, and our statute fixes. the notice to be three days.

A covenant to pay rent is the very basis of the tenure in almost every lease. To say that this covenant is like any other debt to the landlord, is inconsistent.

The statute gives the re-entry, and it is only necessary to follow the forms of proceeding under the statute.    N. Y. Dig. 382, 3, 4, sect. 133, 4, title, Landlord and Tenant.

The language of article 8, in the original lease, intends to secure to the landlord all *his right without injury*, as specified in article 3d, which is clearly a right reserved, to re-enter, and "take safe back his rights without any reclamation." Article 8th, renouncing all laws and statutes in the tenant's favor, gives Peralta the right to re-enter, for a failure on the part of the tenant to perform the stipulations in the first clauses, which were to pay rent.

*Sloan*, for respondent,

Stated some facts preceding the lease on the record. In August, 1850, Dessassier and Basquit went into possession of the Encinal, under a verbal lease from Peralta for five years, for the purpose of cutting wood and making charcoal. A lease was drawn, but was never executed. In November, 1850, Basquit quit the concern, and retired, when Maitre took his place, who, with Dessassier, continued the business. On the 23d, Dessassier and Maitre leased to Chipman and Aughenbaugh a certain part of the Encinal for four years and a half, from the 1st February, 1851. Maitre retired, and Payot came into his place, and on the 21st February, 1851, the lease on the record from Peralta to Dessassier and Payot were executed. The cutting of wood and making of charcoal were continued by them and their successors until they were enjoined by the plaintiffs, about the 1st November, 1851. ·The respondent soon after this acquired an interest in the lease, and subsequently the whole was transferred to him, with the consent of Peralta.

On the 26th March, 1851, the appellants procured from Dessassier, Emeric, and Payot, their confirmation of the sub-lease from Dessassier and Maitre to them, made 1st February, 1851, by endorsement, viz., "The written lease is hereby confirmed by us this day, we having become the lessors of the within-described ground from Don Antonio Peralta. Our company consisting of Joseph Dessassier, Joseph Emeric, and J. M. Payot. March 26, 1851.

"(Signed) J. M. PAYOT & Co."

On the 16th October, 1851, the appellants, then lessees of Emeric for part of the Encinal, for a term to end the 1st August, 1855, contracted with Peralta to purchase the reversion upon the term to Emeric, to end the 21st February, 1857, and Peralta, on the 22d October, 1851, executed to appellants a deed of conveyance, and delivered to them his copy of the lease with Emeric.

Thus, while the ultimate reversion vested in the appellants, the intermediate reversion of the part underlet to them vested in Emeric.

The appellants insist that Emeric has forfeited his lease on two grounds: 1, non-payment of rent; 2, the commission of waste.

There was no forfeiture for the non-payment of rent. The lease contains no clause of re-entry for this cause; the payment of rent is not made a condition of the tenure, it is a mere covenant, and no rule of law, statutory or common, works a forfeiture for this more than any other debt owing to his landlord. Such termination of a tenancy can only arise under an express agreement of the parties. Adams on Ejectment, 157, 158, 160, and cases cited.

The act gives no remedy unless the tenant *holds over;—failure to pay is not sufficient.*

There can be no holding over where the term is not ended by efflux of time, or the act of the parties, or when the tenant has committed an act of forfeiture. Norris & Peake, 528, sec. 3; Ib. 531 to 534; 4 Barn. & Ald. 401; 6 Eng. Com. Law Rep. 535; 6 Bar. & Cress. 519; 13 Eng. Com. Law Rep. 238; Adams on Ejectment, 160.

If the act be held to impose a forfeiture for non-payment of rent in the absence of a stipulation to that effect, still demand must be made "before sunset," as at common law. Jackson v. Harrison, 17 J. R. 66; Adams on Ejectment, 160, 161, 162; 6 Esp. 106.

The strict common law rule is insisted on, where it has not been repealed in all cases: Adams on Eject. 162 to 192.

In this case, the tender made would prevent a forfeiture, even if the right to re-enter had been reserved. Defendant was in

HARVARD LAW SCHOOL LIBRARY.

possession of the part of the premises under a rent of $80. Why should he not have the right to recoup this sum? Why pay $140 per month for the whole, when they had in effect got back a part. One claim should compensate the other, and the balance only should be recovered. 8 Wend. 109; 3 Hill N. Y. 174.

The commission of waste by a tenant for life, or a term of years, does not in this State work a forfeiture, but only subjects him to the payment of treble damages. At common law, waste was punishable when committed by guardian in chivalry, tenant in dower, or tenant by the curtesy, because their estates were created by act of law; but where the tenant came in by demise, and could have provided against it, and did not, it was his own default. The remedy was extended to tenants for life and for years by the Stat. of Marlbridge, 52 Henry III. c. 23, and of Gloucester, 6 Edw. 1, c. 5. By the latter, the forfeiture did not extend to the whole premises, but to the place where the waste was committed. 2 Bla. Com. 282, 283, 286.

The Stat. of Gloucester is not in force here. See acts of 1851, page 92, sec. 250.

No statute of this State imposes forfeiture for waste, or other penalty than treble damages.

It is contended the respondent had no right to cut wood under the lease, the waste complained of. A writing may be read by the light of surrounding circumstances, and parol evidence is admissible to disclose this, not to ascertain a secret intent, but the meaning of the words used.. 1 Greenl. Ev. sec. 277, 278, 279, 280, 282, 283, 284, 286, 287, 288, and 295.

The acts of the parties, or usage, may be proved to explain doubtful words or clauses in a deed. 3 Phil. Ev. 139, note 954; 16 J. R. 14, 23; 7 Pick. 274.

The lease, it is evident, was not made for farming purposes, for the right to cultivate the soil is retained by the lessor.

A right to graze a few cows and horses is given to tenants. In mining leases, the intent of the parties is ascertained by showing the use made of the premises, before and at the time of the lease, and parol proof is adequate to show this. If mines were open before the lease, it is not waste in the tenant to con-

tinue digging for his own use, for it is now become the mere annual profit of the land.   2 Black. Com. 282; 22 Vine's Abr. 439, 440 ; Coke Lit. 54 b. ; Coke's Rep. B. 5 ; Saunders' case.

The preceding lessees were cutting and charring wood, Peralta consenting, up to the time of their lease to defendant.

HEYDENFELDT, Justice, delivered the opinion of the court. MURRAY, Chief Justice, concurred.

The appellants say that the estate of the defendant (a term for years) is forfeited, for two reasons: first, for the non-payment of rent; 2d, for the commission of waste.

At common law, there was no forfeiture upon either of these grounds.   It was only by the Statute of Gloucester, 6 Ed. 1, that the remedy of forfeiture was given for waste, and it was then expressly confined to the place wherein the waste was committed. 2 Black. 283.   Our statute confines the remedy to the recovery of treble damages.   Laws, 566, 52, 59.

In reference to the first point, I can come to no other conclusion, than that, by the 13th section of the act concerning forcible entries and unlawful detainers, it was the intention of the legislature to make the non-payment of rent work a forfeiture of the estate of the tenant.   In order to effect this, however, it must be held necessary to pursue the same strictness as is required at common law to work a forfeiture, where there are stipulations in the contract of lease to that effect.   The rent must be demanded on the day it becomes due, and at a late hour of the day.

See the case of Jackson v. Harrison, 17 J. R. 66, and the cases there cited.   Adams on Ejectment, 160.   Gaskill v. Trainer, decided at the present term of this court.

The record in this case discloses no demand whatever of the rent, and it follows there can be no forfeiture.

Judgment affirmed.