McGlynn *et al.* *v.* Moore *et al.*

JOHN A. McGLYNN AND ANDREW J. BUTLER, EXEC-UTORS OF THE LAST WILL AND TESTAMENT OF DAVID C. BRODERICK, DECEASED *v.* GEORGE H. MOORE AND FRANCIS B. FOLGER.

FORFEITURE OF TERM IN A LEASE.—Previous to the passage of the Act of April 25, 1862, amending the Act "concerning forcible entries and unlawful detainers," in order to work a forfeiture of the term of a lease for non-payment of rent under the thirteenth section of said Act, the landlord was required to make a demand for rent with all the strictness required at common law.

CONSTRUCTION OF LEASE.—Where, in the *habendum* clause in a lease, it is pro-vided that the lessee is to have and hold the premises demised from a certain day of the month for a period named, and the rent is also made payable monthly on the last day of each and every month during said term, the word "from" will be construed as exclusive or inclusive of the day named in the *habendum* clause as will best express the intention of the parties, to be gathered from the whole instru-ment, and if construed as exclusive of that day, the rent will be payable on that day; but if construed as inclusive of that day, the rent will be payable on the day previous.

DEMAND FOR RENT.—In order to work a forfeiture of the term in a lease under the common law, it was necessary for the landlord to make a demand for the precise sum due for rent on the day it fell due, at the most notorious place on the demised premises; and if there was a dwelling house on the demised premises, the demand was required to be made at the front door of the same.

PLEADINGS IN ACTION TO REMOVE LESSEE.—If the complaint in an action to remove the lessee from the demised premises on the ground of a forfeiture of the term for non-payment of rent, alleges generally that a demand for rent was duly made of the defendants on the premises, an answer, denying that the plaintiffs demanded of defendants the payment of the rent, is sufficient as a denial.

WAIVER OF FORFEITURE OF THE TERM BY LESSOR.—If rent is received by the lessor after a forfeiture of the term by the lessee by reason of a breach of a cove-nant in a lease, the receipt of the rent is a waiver of the forfeiture, unless the cove-nant which has been violated by the lessee is a continuing covenant, or the lessor was ignorant that a forfeiture had been incurred.

McGlynn *et al. v.* Moore *et al.*

COVENANT IN LEASE.—If the lessee covenants in the lease to build within a given
time on the demised premises, the covenant is not a continuing covenant; and
if the lessee fails to build, the receipt of rent by the lessor, accruing after the
end of the time given, is a waiver of the forfeiture.

APPEAL from the County Court of the City and County of San Francisco.

Defendants recovered judgment in the Court below, and plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*Ralph C. Harrison,* and *Hoge & Wilson,* for Appellants.

Leases, with a term commencing at a time preceding the date, are not without precedent, but on the contrary, are well known to the law and have a fixed construction. "A lease, dated one day, *habendum* from a day preceding, commences in point of computation from the time marked in the *habendum;* in point of interest, from the date." (2 Platt on Leases, 50, 53, and cases cited.)

"By appointment of law, the rent is payable on the demised premises if no other place be appointed by the parties for the purpose,"—in the lease. (See 2 Platt on Leases, 100, and cases cited, where he is treating of the contents and parts of a lease; Ib. 333–4, and cases cited.)

The breach of such a covenant, and the consequent forfeiture, is not waived by the subsequent receipt of rent. It is a *continuing covenant,* and therefore the continuance of the failure to observe it works a continual right to a forfeiture. (See Taylor's Landlord and Tenant, Sec. 500, and cases cited; 2 Platt on Leases, 471–2; *Fryett ex dem. Harris* v. *Jeffrey,* 1 Esp. 393; *Beach* v. *Crain,* 2 Comstock, 86.)

"Where there is a *continuing cause of forfeiture,* the landlord will not be precluded from taking advantage of it by receiving rent which accrued after the breach was originally committed." (Taylor's Landlord and Tenant, Section 500; *Bleecker* v. *Smith,* 13 Wend. 530; *Sheppard* v. *Allen,* 3 Taunton, 78; *Fryett* v. *Jeffries,* 1 Esp. 393; *Doe* v. *Bancks,* 4 B. & Ald. 401.)

49

*S. F. & J. Reynolds*, for Respondents.

The demand was made one day too soon. The *last* day of each month of the *term* of this lease occurs on the *first* day of each calendar month.

When time is to be computed from or after a certain day, that day is excluded, even though it be the date of the instrument, unless it appears from the instrument itself that a different computation was intended.

" Touching the time of the beginning of a lease for years, it is to be observed that if a lease be made by indenture, bearing date the twenty-sixth of May, etc., to have and to hold for twenty-one years *from the date* or *from the day of the date*, it shall begin on the twenty-seventh of May. If the lease bear date the twenty-first of May, to have and to hold from the making thereof, or from henceforth, it shall begin on the day on which it is delivered, for the words of the indenture are not of any effect till the delivery, and thereby from the making, or from henceforth, take their first effect. But if it be ' *a die confectiones*,' then it shall begin the next day after the delivery." (Coke on Litt. p. 46, Chap. 7, Sec. 58.)

In *Dyer*, 218, (b,) it is held that the words " next after the date of the deed" were exclusive of the day of the date.

In *Clayton's Case*, 3 Coke's Rep. 1, it is held that " from the day of the making" was exclusive. (*Cornish* v. *Cawsey*, Style, 118 ; *Bacon* v. *Waller*, Bulstrode, 204 ; *Llewellyn* v. *Williams*, 1 Roll. Rep. 387.)

In *Bigelow* v. *Willson*, 1 Pick. 494, the Court say, " that the words ' from the date,' and ' from the day of the date,' when used in a lease to designate the commencement of a term, have precisely the same meaning. This has been denied in some old cases, but these cases have been overruled, and the principle has been long established."

The Court then refers to Coke on Littleton, and also reviews the case of *Pugh* v. *The Duke of Leeds*, Cowper, 714, and shows that the principles laid down by Lord Mansfield in that case are not at all in conflict with the cases above

referred to. But that when from other parts of the lease it clearly appears that a different computation of time was intended, then such intention shall not be defeated. We refer the Court also to *Henry* v. *Jones*, 8 Mass. 453; *Higgins* v. *Peters*, 1 Metcalf, 127; *Cornell* v. *Moulton*, 3 Denio, 13.

When "the demand is only in order for a distress, there it is sufficient if it be made on *any notorious* part of the land, because this is only to entitle him to his remedy for his rent, and therefore the whole land being equally the debtor, and chargeable with the rent, a demand upon it, without going to any particular part of it, is sufficient." (Bacon's Abridg., Ed. of 1854, p. 487, title Rent, I, 3.)

The distinction between a demand for the purpose of forfeiture and re-entry, and a demand for the purpose of distress, are marked and well defined.

The right to re-enter, for breach of this covenant to build, was waived by the acceptance of rent for seven months after the alleged breach. The lessors erected a large warehouse, but not of the dimensions required by the covenant. And, by the acceptance of rent after it was so built, it was accepted by the landlord, and its variance from that provided for was waived, so far at least as the question of re-entry was concerned.

*Hoge & Wilson*, in reply.

The demand in front of the warehouse was sufficient.

The cases cited by the respondents' counsel are numerous, but upon examination they will be found either to have no relevancy to the question or not to sustain his position.

Of the cases cited in the respondents' brief the following have no reference to the *place* or manner of demand, but refer exclusively to the *proper day* or *time* of making demand : *Chipman* v. *Emeric*, 3 Cal. 283; *Gaskill* v. *Trainer*, 3 Cal. 339; Smith's Landlord and Tenant, 119, 120; Taylor's Landlord and Tenant, sec. 297; those cited in the note to sec. 493 of Taylor's Landlord and Tenant, to wit: *Clun's Case*, 10 Rep. 129 *a*; 1 Leonard, 141; Cro. Eliz. 209.

In *Connor* v. *Bradley*, 1 Howard, 216, cited in note to section 493 of Taylor's Landlord and Tenant, the Court upon this subject merely say : " The demand must be made in *the most notorious place of the land*, even though there be no person on the land to pay," citing several authorities. Taylor himself, in section 493, says : " The demand must be made at the most notorious place upon the land, which, if there be a dwelling house, is the front door."

So, also, 1 Saunders, 287, also cited in above note.

Coke on Littleton, 202 *a*, cited in the note to the above section, says : " If one place be as notorious as another, the lessor has his election to demand it at either, and although the lessee be in some other part ready to pay the rent, yet that will not avail him."

The same language is found in 2 Platt on Leases, pp. 333, 334, cited by respondents' counsel.

In 2 Platt on Leases, pp. 333, 334, cited by respondents' counsel, the following is the language used : " If a house or a house and lands form the *subject* of demise, the lessor must appear at the front door, being the most notorious part of the house, and there demand the rent, whether the lessee or any one on his behalf be there or not ; a demand at the back door is not sufficient."

Coke on Littleton, 153 *a*, cited in the notes to the above authority, has the following language : " If there be a house and land, a demand on the land is sufficient." These are all the authorities cited by the respondents' counsel, and from them it will be seen that his position cannot be sustained. It is further to be observed that not one of them is an opinion in a case adjudicated upon the point, but that they are all either propositions laid down by elementary writers, or loose dicta uttered by Judges in determining some other question.

The rule to be deduced from all the cases is, that the demand must be made in *the most notorious place*.

By the Court, RHODES, J.

David C. Broderick, the appellant's testator, on the fourteenth of July, 1859, executed to the respondents a lease of certain real estate in the City of San Francisco, for the term of nine years and three months.   The *habendum* clause is as follows : " To have and to hold said premises unto said parties of the second part, from the first day of July, 1859, for and during and until the end and term of. nine years and three months thence next ensuing."   The time for the payment of the monthly instalments of rent is specified in these words, " payable monthly on the last day of each and every month during said term."   The lease contains a covenant on the part of the lessees, to construct on the demised premises, within two years from the date of the lease, a warehouse of a specified description and dimensions.

In April, 1862, the appellants, as Broderick's executors, commenced an action against the respondents, under the thirteenth section of the Forcible Entry Act, to remove them from the possession of the premises, on the ground that the term was forfeited.   They allege that on the thirty-first day of March, 1862, four hundred dollars became due for rent; that on that day they demanded the same on the premises, and that the lessees did not then, and have not since paid the rent then falling due.   They allege that a forfeiture was also incurred, in consequence of the neglect of the lessees to construct a warehouse, according to the covenants in the lease.

The case has been presented by both parties on the theory that the lessor, in seeking to avail himself of the benefits of a forfeiture for the non-payment of rent, must pursue the strict rules of the common law in all respects ; that the statute (Sec. 13, Forcible Entry Act) worked no change of those rules in any manner.   We shall therefore consider the case in that view.   The first point for consideration is to determine the time for the payment of the rent.   The time stipulated in the lease for the commencement of the term, has some tendency to determine this point, though it may not be

conclusive.  The parties to the lease, provided for the commencement of the term at a time anterior to the time of the execution of the lease.  We have no means of ascertaining precisely the object of the parties, in thus having the term begin at a time before the execution of the lease, and in the absence of all proof or explanation upon the matter we will be justified in presuming that they resorted to this mode for the purpose of making the months of the term accord with the calendar months.

They said in the lease, that the rent should be paid on the "last day of each and every month during said term." If they had said the last day of each and every month *of* said term, instead of *during* said term, there would be less difficulty in upholding the construction claimed by the respondents.  They insist that the parties, having provided that the lessees should hold *from* the first day of July, intended to exclude that day, and that therefore the month of the term would begin on the second day of each calendar month. The old rule doubtless was to exclude the day of the date in all cases where the holding was *from* a given date, but since the decision of *Pugh* v. *Duke of Leeds*, Cowper, 714, the word *from* has been construed as exclusive or inclusive, as would best express the intention of the parties, to be gathered from the whole instrument, the Court holding that the word '*from*' may, in vulgar use, and even in strict propriety of language, mean either inclusive or exclusive."

In *Deyo* v. *Blakely*, 24 Barb. 9, the lease was executed on the twenty-fifth of January, to hold from the first day of April, the rent payable quarterly, on the first day of April, etc., and the Court in ascertaining whether the rent was payable in advance held the first day of April to be included. No present interest passed upon the execution of the lease, and the construction was not given to prevent a penalty, forfeiture or estoppel, nor to uphold the validity of the instrument, but merely to afford the lessor a better security for the payment of the rent, according to the intention of the parties, as collected from the whole instrument.  Mr. Justice Birdseye

McGlynn *et al. v.* Moore *et al.*

in that case says : "No transposition is resorted to.  There is, in fact, no construction, in the primary signification of that word, for the parties have made a complete and intelligible work in the contract as they executed it, and it needs not the reforming hand of the Court to make it clear and unambiguous. There is no room for construction, and nothing for construction to do."  The parties here having covenanted for the lessees holding from the first day of July—a day then past—and for their payment of rent on the last day of each and every month, could not have made their intention plainer, if they had said that the rent should be paid on the last day of July and of each month thereafter.  If the parties could give a construction to the lease by their subsequent acts, and it should be said that they had done so, by the fact that no rent was paid on the last day of the calendar month, it may be answered that the rent does not become due until the last minute of the natural day.  (1 Williams' Saunders, 287, *b*, note.)

We see no reason for adopting the respondent's construction, except the fact that such was the rule until the decision in *Pugh* v. *Duke of Leeds ;* but the terms of the lease are harmonized by adopting the appellants' construction, and holding that the months mentioned in the lease, were intended as calendar months.

The next point of controversy is whether the demand was made at the proper place.  The agent of the appellants demanded the rent at each door of the warehouse, but did not make demand at any other place.  He states in his testimony, that he made the demand with his "face turned in all directions—toward the frame building as well as toward the warehouse."  There was on the premises, besides the warehouse, a frame building, standing fifteen to twenty feet east of the warehouse, its northern side being about ten feet south of the northern line of the warehouse, and the front door being on the northern side.  The office door of the warehouse is on its eastern side, near the northeast corner.  In making the demand at the office door, the agent stood only a few feet distant from the frame building, but he made no demand except as above

stated, at that building or at its front door. We do not understand that it is pretended by the appellants, that a demand was made elsewhere than at the doors of the warehouse. At the time of the demand the frame building was, and for four years previously had been, occupied by a man with his family, by the license of the lessees, and he and his family were in the building at the time the agent says he made the demand, but the occupant of the building did not hear the demand.

The respondents contend that the demand should have been made at the dwelling house on the premises—that in order to work a forfeiture; if there is a dwelling house on the demised premises, the demand must be made there. When it was required by the common law rule, that the lessor should demand the rent upon the leased premises, it was not intended that he should perform a mere idle ceremony, but that he should thereby apprise the lessee of the fact that the rent was then demanded. He was required to go to the premises, because the rent issued out of them, and to make the demand at the most notorious place thereon, because the lessee, or some one who might inform him, would be more apt to be at that place and hear the demand, than elsewhere on the land. It is said in the notes to *Duppa* v. *Mayo*, Williams' Saunders, 287, in treating of the demand of rent : " It must be made upon the land, and at the most notorious place of it. Therefore, if there be a dwelling house upon the land, the demand must be made at the front or fore door, etc." Sergeant Williams' notes to that case have long been regarded as the leading authority upon the subject of the demand of rent to create a forfeiture. (*Van Rensselaer* v. *Jewett*, 2 Coms. 147.) The demand not having been made at the front door of the dwelling house, was not sufficient as a demand of rent, at common law, to work a forfeiture of the term.

The appellants, however, contend that the place of demand is not in issue, and say that the respondents " merely denied that any demand had been made." The appellants aver in their complaint that a demand for the payment of the rent " was duly made of the said defendants on the premises on

the said 31st day of March, etc. ;" and the respondents in their answer deny " that on the 31st day of March, 1862, or at any other time, the said plaintiffs demanded of the said defendants the payment" of the rent.    The appellants have not alleged that they made the demand at the most notorious place, or at any certain place, on the premises, and the respondents were not required to deny the demand at the most notorious place or any place on the premises, in advance of the allegation or the demand at such place."

The denial is as broad as the allegation.    If under the allegation that the demand was duly made on the premises— which amounts to no more than that the demand was made on the premises—the appellants were authorized to prove that the demand was made at a particular place on the premises, then under the denial in the answer the respondents might prove that such place was not the most notorious place on the premises.    A demand, to be of any avail to work a forfeiture at common law, must be made at the proper time and place, and for the precise sum then falling due, and a denial of the demand puts the lessor upon proof of all the essentials of the demand ; and if the lessor is authorized to allege generally, in any respect, the fact of the demand, the lessee would be authorized to make his denial in as general terms.    No specific objection seems to have been made on this ground in the Court below ; but on the contrary, a large part of the oral testimony in the record was offered to prove the places where the demand was made, and to show what was the most notorious place on the premises.    If the pleadings of either party would be considered insufficient in a Court of record, for the want of a more specific averment or denial of the place of the demand, yet they are sufficient in proceedings commenced before a Justice of the Peace.

The appellants also claim a forfeiture of the lease, by reason of the breach, by the lessees, of their covenant to build the warehouse, as specified in the lease, within two years from the date of the lease.    Provision is made in the lease for the re-entry of the lessor, "if default shall be made in any of the

50

covenants on the part and behalf of the said parties of the second part, to be kept or performed," and under it the lessor had the right of entry for a forfeiture incurred in consequence of a breach of the covenants to build. But the respondents claim that the forfeiture was waived, by the lessors receiving the rent after the forfeiture. Rent was received by the appellants for the months of July, August, September, October, November and December, 1861, and January, 1862. The warehouse was to be completed, according to the covenant, by the 14th of July, 1861. The appellants, to avoid the consequences of the receipt of the rent, and to show that it did not amount to a waiver of the forfeiture, say that the covenant to build is a continuing covenant; that the failure of the lessees after the 14th of July, 1861, to build was a continuing breach of their covenant, and that if the receipt of rent accruing after that time was a waiver of the forfeiture, the neglect of the lessees to build after such receipt of rent was a continuing cause of forfeiture.

There can be no doubt that the receipt of rent accruing subsequent to the act which works the forfeiture, waives the forfeiture. (*Jackson* v. *Allen*, 3 Cow. 229, and cases cited; *Bleeker* v. *Smith*, 13 Wend. 530; *Jackson* v. *Sheldon*, 5 Cow. 448; 2 Platt on Leases, 468; Taylor, Land. and Ten. sec. 497.) But it must appear that the lessor, at the time of the receipt of the rent accruing subsequent to the breach of the covenant or condition, knew that the forfeiture had been incurred. (*Jackson* v. *Brownson*, 7 John. 234; *Jackson* v. *Shutz*, 18 John. 174; *Clark* v. *Cummins*, 5 Barb. 359; 2 Platt on Leases, 468–471.) It appears from the stipulation of the parties, that since the 14th day of July, 1861, the appellants with full knowledge of the facts constituting the breach of the covenant to build, accepted the rent from the lessees, on seven different occasions, but none that accrued since February 1st, 1862. The appellants have waived the forfeiture unless the covenant to build is a continuing covenant.

No case is cited by the appellants that asserts the doctrine,

that a covenant to build within a given period, is a continuing covenant, and we have been unable to find such a case.

A covenant to pay rent by instalments, to keep the premises in repair, to keep them insured, to pay the taxes, to properly cultivate the land, and many others that indicate or necessarily imply the doing of the stipulated acts successively, or as often as occasion may require, are continuing covenants; but the covenant to repair or insure on or before a time certain, or forthwith, to pay a gross sum as rent for the term, or not to assign the lease, and others of a like character, are not continuing covenants, because the parties contemplated by such covenants, to provide for the doing or the omission of a single act. The distinction between the two classes of covenants, is well illustrated by the covenants against sub-leasing, and against the assignment of the term. If the lessee assigns contrary to his covenant, it is a "breach once for all," but a forfeiture accrues to the lessor each time the lessee sub-leases the premises contrary to his covenant. If the lessee should, after his assignment, contrary to his covenant, procure a re-assignment of the lease to himself, a forfeiture would not be worked by his assignment the second time.

In *Stuyvesant* v. *Mayor etc., of New York,* 11 Paige, 247, the plaintiff had conveyed a certain portion of his land to the city, subject to the covenant on the part of the city to proceed immediately to regulate, inclose and improve the land in a designated manner, and to hold and use the same for a public square. The Chancellor held that the covenant to proceed immediately to regulate, inclose and improve the lands for a public square was "like a covenant to build a house for the benefit of the covenantor, or for the enhancement of the value of his property," and said it was "an entire, not a continuing covenant," differing in that respect from the covenant to hold and use the land solely for the purposes of a public square. The plaintiff had long previously sued the city and recovered a judgment for a breach of the covenant to "regulate, inclose and improve;" and the Court held that such judgment exhausted the plaintiff's remedy on that covenant; that there

was not a new breach produced by the continued failure of the city to keep the covenant. There is nothing in the nature of the covenant to build by a given time, that indicates that a continued failure to perform the covenant will produce a succession of breaches; but, on the contrary, it more nearly resembles, in this respect, the covenant not to assign, or for a re-entry in case of the bankruptcy of the lessee, in either of which cases the breach, if it takes place, is once for all. We are of the opinion that the proposition of the appellants, that the covenant under consideration is a continuing covenant, is unsupported by reason or authority; and it follows, therefore, that their receipt of the rent accruing after the breach, with a full notice thereof, was a waiver of the breach; and that, they once having waived the breach, had no right of entry thereafter for the forfeiture.

Judgment affirmed.

Mr. Justice SAWYER, having been attorney in the case in the District Court, did not sit on the hearing of the case.

Mr. Justice SHAFTER, having been consulted in this case, when at the bar, did not participate in the decision nor hearing.


By the Court, RHODES, J., on petition for rehearing.

The appellants insist that a sufficient demand of the rent was made at the dwelling house; and they made the same point in their brief, but it was overlooked by us, probably in consequence of their holding that the demand at the warehouse was sufficient. The Court below found "That the demand was made at each of the doors, on the north, west and east sides of the warehouse, but that no demand was made at the said dwelling house, or in front, or at the front door thereof." Although the person, while making the demand at the office door, stood near the dwelling house, we doubt if he intended to make a demand at the front door of the dwelling house, and we cannot say that the Court committed an error in finding the fact to be, that no demand was made at that place.

We are satisfied that we have correctly stated the law in respect to the place where the demand was required, at common law, to be made.   The remarks of Sergeant Williams, in the notes to *Duppa* v. *Mayo*, 1 Saund. 287, may have been founded on mere dicta, as stated by the appellants, but that learned writer's notes have for many years been regarded as high authority, and the doctrine that the demand must be made at the front door of the dwelling house, if there is a dwelling house on the leased premises, has been generally recognized by the Courts, except when the rule has been changed by statute.

We are asked to grant a rehearing, that the question may be argued, whether the common law demand was required, when the landlord proceeded under section thirteen of the Forcible Entry Act.   If the question was now for the first time before the Supreme Court, we should have great hesitation in holding, that in such a case, the demand as required at common law was necessary to be made; but, in *Chipman* v. *Emeric*, 3 Cal. 273, and *Gaskill* v. *Trainer*, 3 Cal. 334, it was held, that in order to work a forfeiture for the non-payment of rent, the landlord must make the demand with all the strictness required at common law.   Those decisions have been too long recognized as the correct construction of section thirteen of the Forcible Entry Act, to be now changed by the Courts; and the rule has, in fact, been changed by the Legislature since the commencement of this action.   (See Statutes 1862, page 420.)

Rehearing denied.