UNITED STATES TRUST COMPANY OF NEW YORK, as Executor and Trustee under the Will of EUGENE HIGGINS, Deceased, Plaintiff, *v.* BROADWEST REALTY CORPORATION, Defendant.

Supreme Court, Special Term, New York County, June 1, 1951.

*Richard S. Baxter, J. Morgan, Jr.,* and *James M. Montgomery* for plaintiff.

*Thomas Stokes, Robert E. Hoppman* and *Duane B. Lueders* for defendant.

BREITEL, J. Plaintiff seeks a declaratory judgment, after trial, that the lease, under which defendant holds certain real property, has been forfeited for breach of a covenant to build a twelve-story building on the premises demised.

Plaintiff's testator, as lessor, made a lease of premises located at 94th Street and Broadway in Manhattan to one Healy, a tenant, from whom defendant derives as tenant by mesne assignments. The term was for 200 years commencing July 1, 1920. The lease contained stipulated rents for ten years, and thereafter provided for rents to be determined periodically by applying a ratio to the valuation of the property as assessed by arbitration. The provision of the lease which gives rise to this litigation is the 9th paragraph, which refers to the tenant as the party of the second part, and which reads as follows:

" 9. That the said party of the second part will immediately proceed to erect upon the Broadway lot of the hereby demised premises, a business building which shall be at least two stories in height. Should the party of the second part, his heirs, executors, administrators or assigns decide at any time after said business building is completed, to improve said Broadway lot in conjunction with the balance of the premises hereby demised, permission to remove said business building is first to be obtained from the party of the first part, his executors, heirs, administrators or assigns, in writing. And the said party of the second part, his heirs, executors, administrators and assigns, further agree that he or they shall and will within ten years from the inception of this lease proceed with the improvement of the balance of the land hereby demised by the erection thereon

of an apartment house or hotel or other similar and suitable improvement, which shall be at least twelve stories in height or at least such height as the laws then in force will permit, which said improvement shall cost at least $500,000. All plans and specifications for any such improvement are first to be submitted and the approval had and obtained in writing from the said party of the first part, or his agent in New York City designated for that purpose.''

Before the expiration of the ten-year period, the time for performance of the covenant to build was extended for an additional five years. This extension was contained in an agreement which also granted permission to the original tenant to make the first assignment of the lease. Again, before the expiration of the extended period, the time for performance was further extended for an additional ten years, namely, to July 1, 1945.

After the extension to July 1, 1945, there were no further extensions with reference to the covenant to build. There were, however, a series of agreements granting permission to make a further assignment of the lease and for reductions in the rent. All these agreements stipulated that except as expressly agreed the main lease was not modified in any other particular or manner and that all of its other provisions were ratified and confirmed and were to remain in full force and effect. Accompanying these agreements of modification were numerous arrangements both before and after July 1, 1945, the date of expiration of the covenant to build, for the improvement, repair, and maintenance of the existing buildings, between the present tenant and the lessor's agent, whose complete authority is not questioned. The court finds that in the light of the circumstances the improvements, repairs and maintenance involved substantial sums. Certainly, the parties gave these matters substantial and careful — even meticulous — consideration. These arrangements indicated that the building called for by the covenant to build was not going to be erected during or after July 1, 1945. In December, 1946, the undisputed fact is that the tenant asked about the covenant to build, and the lessor's agent said, '' We know that you'd never build.'' This was at a time when an increase in the previously reduced rent was being negotiated. The negotiations resulted in a written agreement; but it was wholly silent on the matter of the covenant to build, the last day for performance of which had already passed.

The lessor, plaintiff's testator, died July 28, 1948. Plaintiff, as executor and trustee, claims that the lease was forfeit by failure to perform the covenant to build; that the covenant is a continuing one; and that the right of forfeiture has not been waived by the subsequent conduct of the parties or the acceptance of rents. Defendant has set up defenses of laches, waiver, estoppel, implied modification, economic impossibility or performance, unjust enrichment to plaintiff, and adequacy of the remedy at law.

It should be noted that plaintiff does not at this time seek performance of the covenant; it demands a declaration of the forfeiture of the 200-year leasehold. The proof was uncontradicted that performance of the covenant to build would require a capital expenditure of over $2,000,000; and that such a capital investment for that purpose in that neighborhood under present circumstances and future projection of the economic factors in the neighborhood could not economically justify the project. The uncontradicted appraisal of the present property is $410,000. The uncontradicted appraisal of the property improved as required by the covenant to build (by the added capital expenditure of over $2,000,000) would be $1,650,000. These matters are relevant in construing the conduct of the parties, although the economic undesirability of performance is not a valid defense (Restatement, Contracts, § 467; 6 Williston on Contracts, § 1963; *Canadian Ind. Alcohol Co.* v. *Dunbar Molasses Co.*, 258 N. Y. 194, 198 *et seq.; Weston* v. *State of New York,* 262 N. Y. 46, 51).

Approaching this case as one of first impression it would be easy to dispose of the issues. The covenant to build as extended ran to July 1, 1945. That was the period in which the tenant had to perform. When that period expired, the covenant not having been performed, the lessor, having full knowledge of the facts, had an obligation to elect within a reasonable time to require performance or to bring about a forfeiture of the lease. When, instead, it continued to act with reference to the leasehold as if the breach of the covenant was of no consequence, entered into further modifications, accepted rents for several years, told the tenant that " We know that you'd never build ", and this conduct is rationally explained by the surrounding economic factors, all men, it seems to the court, should and would say the right of forfeiture was in fact waived. The waiver in fact would not be saved by the failure to make reference to it in the later modification agreements, or because such modification agreements reserved all existing provisions of the

lease not expressly modified. Literally, the covenant required the building to be erected by July 1, 1945. Silence thereafter, the covenant not having been performed, constituted a waiver of the right to forfeiture of the lease, and perhaps even an abandonment of the covenant. To argue that the covenant continued after July 1, 1945, is to make meaningless the time limitation. That something in the covenant, at least the time limitation, was waived, is shown by the ludicrous result that would flow if the building had been erected after July 1, 1945, but before the commencement of this action. If the time limitation was waived by the conduct of the parties, then on the same evidence the entire covenant could have been waived, and certainly the right of forfeiture, and the conduct of the parties bespeaks that very conclusion. The fact that the later modification agreements fail to extend the covenant argues at least as much for a waiver of the covenant as it does for its survival by virtue of the reservation preserving other terms of the lease.

Plaintiff would avoid this result by the contention that the covenant to build was a continuing covenant, viz., that it continued beyond July 1, 1945, thus giving rise to a succession of breaches or a continuing breach, surviving acts of waiver, presumably for the term of the lease. (In that connection it would be wise to consider whether plaintiff would claim that the covenant continued into the last few years of the 200-year term.) To support this contention, two cases are cited. One is *Bleecker* v. *Smith* (13 Wend. 531), decided in 1835. The case is distinguishable on its face, the court having found that the cutting of wood in violation of the covenant was a continuing affirmative act during the times that rent was being accepted; and that " To operate as a waiver, the rent must have accrued subsequent to the act which works as a forfeiture." (P. 534.) That casts no light on the instant problem, which is first to determine whether the covenant to build continues beyond July 1, 1945. There is no claim here that the payments of rent before July 1, 1945, constituted a waiver. It is the payments of rent, the modifications, and arrangements for maintenance beyond July 1, 1945, that constitute the basis for asserting waiver.

The other case cited by plaintiff is *Towle* v. *Pullen* (238 F. 107). The lease in this case related to a leasehold in Illinois. It involved a covenant to build by a date certain, breach thereof, and the acceptance of rent after the date certain. The court held that there was a continuing covenant, and therefore no waiver, because the lease provided that defaults in the performance of covenants " shall continue 90 days after notice

thereof in writing '', and that the forfeiture did not occur until after notice given. The court stressed that the tenants always had power, even after the date expressed in the covenant to build had passed, to perform the covenant, because the landlord had not yet served notice of default. Nothing like that situation is involved in the instant case.

The question of whether a covenant to build within a fixed period is a continuing one preventing effective waiver of the breach has arisen in California. The courts held that a covenant to build within a fixed time did not continue beyond the time limit. They held further in accord with the rule as laid down in *Bleecker* v. *Smith* (*supra*) with respect to the necessity for rent to accrue and be paid *after* the forfeiture has occurred in order to establish a waiver. (*Kern Sunset Oil Co.* v. *Good Roads Oil Co.*, 214 Cal. 435; *Inman* v. *Schecher*, 86 Cal. App. 193; *McGlynn* v. *Moore*, 25 Cal. 384, particularly at p. 395 *et seq.*) The question was decided similarly in Upper Canada (*Roe* v. *Southard*, 10 U. C. C. P. 488). See Thompson on Real Property (1940 ed., Vol. 3, § 1305), wherein it is said, '' but the case is different where the covenant by the lessee is to build within a certain time, since it is not then a continuing covenant. There is nothing in the nature of a covenant to build by a given time that indicates that a continued failure to perform the covenant will produce a succession of breaches.'' (Cf. 51 C. J. S., Landlord and Tenant, § 390.)

On the foregoing authorities it is clear that there are no holdings which indicate a result different from the one reached by this court, namely, that the covenant to build did not continue beyond July 1, 1945. On the contrary, such authorities as exist within this State and elsewhere are in accord therewith.

If the covenant to build terminated July 1, 1945, and did not continue, the issue advances to whether there was a waiver of the right of forfeiture. On the undisputed facts, and the findings made by the court as to the manifested contemplation of the parties and the effect of the modifications, arrangements and payments of rent after July 1, 1945, there was such waiver. (*Woollard* v. *Schaffer Stores Co.*, 272 N. Y. 304; annotation, 109 A. L. R. 1262, 1269 *et seq.*, 1277 *et seq.*)

The other issues of law that have been tendered do not seem applicable and, in any event, any discussion of them is unnecessary in view of the court's conclusions.

Plaintiff's motion for judgment is denied and defendant's motion for judgment is granted. Settle judgment.