### McMILLAN, et al v. ROGERO.

Circuit Court, Pinellas County.

December 12, 1957.

Richard T. Earle, Jr., Askew, Wehle, Earle & Holley, St. Petersburg, and E. B. Casler, Casler & Douglas, Clearwater, for plaintiffs.

A. T. Cooper, Jr. and John W. Rowe, Wightman, Rowe & Tanney, all of Clearwater, for defendants.

ORVIL L. DAYTON, Jr., Circuit Judge.

This cause came on to be heard upon an agreed statement of facts and motions for summary final decree filed in behalf of plaintiffs and defendant, respectively.

On April 15, 1956, plaintiffs entered into a certain lease agreement with Leo F. Martin and Lillian T. Martin, his wife, whereby plaintiffs as lessees would pay to lessors the sum of $200 per month for six months and $400 per month thereafter for the remainder of the term of 20 years, with an option to purchase the land which was the subject matter of the lease at the end of the term for $100,000.

The lease contained a covenant to construct permanent improvements on the premises as follows—

"Lessees agree to construct or have constructed on said premises permanent improvements having the minimum ground floor area of 2,000 square feet aggregate; and it is a condition of this lease that if construction for said project shall not be started within one year from this date, lessors shall have the right to terminate in the public records of Pinellas County, Florida, after 30 days written notice to lessees."

The lease also contained—

"If default be made in any payment or in the faithful performance of any covenant herein contained, and such default continue for thirty (30) days, lessees shall become tenants at sufferance and lessors shall be entitled to immediate re-entry and repossession of demised premises and all permanent im-

provements and to retain all monies paid hereunder and this lease thereupon shall cease and terminate upon the filing in the public records of Pinellas County, Florida of a notice of such termination, after 30 days written notice to lessees. * * *

"Any waiver of a breach hereunder shall not constitute a waiver of any subsequent breach."

The lease agreement was drawn by the attorney for the lessors. The words, "after 30 days written notice to lessees", were inserted at the request of the lessees after the agreement was drafted.

Lessees have not been delinquent in the payment of the rent due at any time. On April 15, 1957, lessees paid rent in advance for the period from that date to May 15, 1957 to the lessors Martin. Construction of the permanent improvements had not been commenced on the date of said payment and that fact was known to the lessors. Payment of the rent for the period ending June 15, 1957 was likewise made on May 15, 1957. At the time of such payment on May 15, 1957, construction of the building had not been commenced and that fact was known to the lessors when they accepted payment. On June 14, 1957, the lessors Martin conveyed to the defendant, Albert L. Rogero, as trustee, their interest in the property "subject to any existing lease." The defendant had knowledge of the lease agreement and of the failure of plaintiffs to commence construction of the permanent improvements at the time of such conveyance.

On June 15, 1957, plaintiffs delivered to defendant's bookkeeper a check in the sum of $400 as payment of the rent from that date until July 15, 1957. The defendant's bookkeeper delivered to plaintiffs a receipt for such payment. The authority of a bookkeeper to receive rental payments and give receipts therefor has not been questioned. On the same day, June 15, 1957, the defendant orally informed plaintiffs that the lease was terminated because of plaintiffs' failure to commence construction of permanent improvements within one year from the date of the lease, April 15, 1956.

On or about June 16th or 17th, 1957, plaintiffs commenced construction of the building, which the court is advised has not been completed, but has been suspended pending the outcome of this litigation.

On June 17, 1957, defendant gave plaintiffs written notice of his termination of their lease because of their failure to commence contruction within one year from the date of the lease.

On July 15, 1957, plaintiffs paid $400 in cash to defendant's bookkeeper and received a receipt therefor. This was in payment of the rent until August 15, 1957. On the same date, July 15, 1957, defendant returned to plaintiffs the check for rent from June 15 to July 15, and $400 in cash for rent from July 15, to August 15, 1957. This cause was filed on July 3rd, 1957. Rent for the ensuing period has been paid into the registry of this court.

This court is concerned with the determination of two questions—

1. Does the acceptance of rent paid in advance by a landlord after the breach of a covenant to build, and with full knowledge of such breach, amount to an affirmation of the continued effectiveness of the lease, and is the landlord thereby estopped to declare a forfeiture for such breach thereafter?

2. What is the meaning of the words, "after 30 days written notice to lessees", inserted in the agreement after the same had been drafted?

It is the position of plaintiffs that when the landlord accepted the payment of the rent then unearned and after the breach of the covenant to build, he forever waived his right to declare a forfeiture because of such breach.

It is the position of the defendant that since the lease provided for no recourse against the lessees individually, the lessors' only remaining security was in the covenant to build permanent improvements on the property and that such breach of the covenant is a continuing one permitting the declaration of a forfeiture at any time.

The right to declare a forfeiture belongs to the lessor rather than to the lessee, for otherwise a lessee at his option could breach a lease which he found unprofitable, and thus escape liability.

It appears to be the general rule that a covenant to build within a definite period of time does not continue beyond the time limit. United States Trust Co. of New York v. Broadwest Realty Co., 106 N.Y.S. 2d 432; 51 C.J.S. 700; 109 A.L.R. 1269. It also appears to be the general rule that if the breach is a continuing one, the acceptance of rent does not estop the landlord from declaring a forfeiture. Towle v. Pullen (C.C.A. 7), 238 Fed. 107.

The principle that equity abhors a forfeiture is well settled and applies to lease agreements as well as other contracts—"Moreover, the settled principle of both law and equity that the contractual provisions for forfeiture are looked upon with disfavor applies with full force to stipulations for forfeiture found in leases; such

stipulations are not looked upon with favor by the court, but on the contrary are strictly construed against the party seeking to invoke them." 32 Am. Jur. 720, 721, sec. 848.

The Supreme Court of Florida expressed the same view in the following language in McCaskill v. Union Naval Stores Co., 59 Fla. 571, 52 So. 961, at page 962—"Courts of equity always mitigate forfeitures, or relieve against them, when this can be done without doing violence to the contracts of the parties . . . . Forfeitures not being favored in the law, the provisions upon which they are based must be strictly construed."

Also, see Rader v. Prather, 100 Fla. 591, 130 So. 15.

With reference to the meaning of the words contained in the lease agreement—"after 30 days written notice to lessees", the Supreme Court of Florida long ago announced the rule to be applied in Fry v. Hawley, 4 Fla. 258, as follows—"Where the language of the instrument is neither uncertain nor ambiguous, it is to be expounded according to its apparent import, and is not to be warped from the ordinary meaning of its terms, in order to harmonize it with uncertain suppositions, in regard either to the probable intention of the parties contracting, or to the probable changes which they would have made in their contract had they foreseen certain contingencies. Whenever the words are clear and unambiguous they must be understood according to their grammatical construction, and in their ordinary meaning." Story on Contracts, 2d edition, par. 639, 2 Evans Pothier on Obligations, 37.

This court is unable to derive any meaning from the language used—"after 30 days written notice to lessees" except that before declaring a forfeiture, the lessor is required to give lessees 30 days written notice of his intention to do so, and his reasons therefor, and that lessees then have 30 days in which to remedy the breach.

The rule in Florida is expressed in the case of Joseph Langner, Inc. v. Finston & Co., 45 So. 2d 338, decided by the Supreme Court in 1949. As construed by this court, the rule in that case appears to be that the breach of a covenant to build is a continuing one, but that the acceptance of unearned rent after the breach is a continuing waiver of the right to declare a forfeiture, inasmuch as in that case the court allowed the lessee a "reasonable time" in which to complete the building.

It is, therefore, the opinion of this court that in accord with the principles of equity and good conscience, the lessees should not be permitted to escape their responsibility to construct the permanent improvements called for by the lease agreement because no for-

feiture was declared upon their failure to do so before the expiration of the time limit set forth in the agreement.

Likewise in accord with such principles of equity and good conscience, this court cannot permit the lessor to declare a forfeiture and terminate the lease after the acceptance of rent with full knowledge of the breach of the covenant to build.

It is the view of this court, therefore, that plaintiffs will be relieved against a forfeiture by allowing them a reasonable time in which to complete construction of the permanent improvements upon the property as set forth in the lease agreement.

An appropriate decree may be prepared from this opinion to include opportunity for the taking of testimony to determine what is a reasonable time for the construction of permanent improvements upon the property if the taking of such testimony be necessary.