THE HON. HENRY C. SMITH,
THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.
THE HON. SYDNEY SANNER,

---

LUNKE, APPELLANT, v. EGELAND ET AL., RESPONDENTS.

(No. 3,190.)

(Submitted November 27, 1912. Decided December 5, 1912.)

[128 Pac. 610.]

*Contracts — Leases — Construction — Sale — Termination of Lease—Pleading—Conclusions.*

Leases—Construction—Sale—Termination of Lease.
  1. *Held,* that a contract of lease of farm lands which provided, among other things, that the lessor reserved the right to sell at any time (the lessee to have the first right to purchase), in which event the lessee should be paid $1.50 per acre for plowing, summer fallowing or other work done by him on the land under the lease, "in full of all claims or demands," contemplated that a sale of the premises by the owner should terminate the lease.

Pleading—Conclusions.
  2. Allegations in a complaint that defendant had entered into an agreement with a third person to dispose of land leased to plaintiff, "contrary to the provisions and agreement contained in said lease," and that defendant would execute a transfer of the land so leased, "without complying with the terms of the agreement as to sale of said property," were mere conclusions of law of the pleader.

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

ACTION by R. O. Lunke against Peter Egeland and Jens Norgaard. Plaintiff appeals from an order dissolving a temporary injunction. Affirmed.

*Mr. John B. Clayberg,* for Appellant, submitted a brief; *Mr. R. Lee Word,* of counsel, argued the cause orally.

(403)

We admit that a court of equity will not ordinarily enjoin the commission of a trespass, but submit that it is well settled by the decisions of this court that, under certain circumstances, such injunctions may be issued, and we submit, further, that the circumstances disclosed in the record herein bring this case within the principles announced in the cases of *Sankey* v. *St. Mary's Academy,* 8 Mont. 265, 21 Pac. 23, *Palmer* v. *Israel,* 13 Mont. 209, 33 Pac. 134, *Lee* v. *Watson,* 15 Mont. 228, 38 Pac. 1077, *Musselshell Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 874, and *City of Bozeman* v. *Bohart,* 42 Mont. 290, 112 Pac. 388.

The only question before the court arises upon the construction of the lease. If the terms of this lease permitting Egeland to sell the property terminated the lease, then the order dissolving the injunction should be affirmed; but if such sale did not terminate the lease, under its terms, the order appealed from must be reversed, and the injunction reinstated.

Our statute provides how contracts of hire of either real estate or personal property may be terminated. (Rev. Codes, sec. 5221.) Section 5222 provides when the hirer may terminate the contract. Section 5223 provides generally when the hiring may terminate. The methods thus prescribed are exclusive. It is usual to provide in all leases for a forfeiture of the lease and the surrender of the possession of the property, upon the failure of the lessee to comply with the terms of the lease. This would undoubtedly come under the authority given under section 5223, which provides that the contract may be terminated "by the mutual consent of the parties." Here, we find nothing of this character in the lease, and, under the law, the lease could not be forfeited, or terminated by any act of the lessor. (See *Smith* v. *Schultz,* 89 Cal. 526, 533, 26 Pac. 1087.) *McDaniel* v. *Callan,* 75 Ala. 327, holds that, under a lease providing that on a sale of the premises, during the term by the lessor, the lessee should surrender the possession of the premises on "being paid a reasonable value for the unexpired term," a mere sale and conveyance did not terminate the lease. (See, also, 43 Misc. Rep. 91, 86 N. Y. Supp. 780; 48 Misc. Rep. 543, 96 N. Y. Supp. 173.)

*Messrs. Hurd & Lewis,* for Respondents, submitted a brief.

Where a lessor "reserves the right to sell," and actually does sell, the lease is thereby terminated. The case of *Wallace* v. *Bahlhorn,* 68 Mich. 87, 35 N. W. 834, would seem to be in point. In that case the defendants, Bahlhorn and others, leased of the

grantor of the plaintiffs, Wallace and others, a certain farm, the lease providing as follows: "For the term of one year from the first day of April next, with the privilege of longer lease (if both parties are suited) for a term of eight years, reserving the right to sell part or all." The defendants occupied the farm for six years and the lessor sold to the plaintiffs. The court held that "the fair construction of the lease is that it should terminate upon a sale of the premises, or a portion of them, as to the part of the farm sold." In that case, as in this, the intention of the parties was that a sale of the property should terminate the lease, and the court held properly that such sale terminated the lease. In the case of *Ogle* v. *Hubbel,* 1 Cal. App. 357, 82 Pac. 217, a similar provision was contained in the lease in question. The lessor sold the premises, and the court, citing *Davis* v. *Schweikert,* 130 Cal. 143, 62 Pac. 411, held that where an actual *bona fide* sale was made, the lease was thereby terminated. (See, also, *De Vitt* v. *Kaufman County,* 27 Tex. Civ. App. 332, 66 S. W. 224; *Frank* v. *Stratford-Hancock,* 13 Wyo. 37, 110 Am. St. Rep. 963, 67 L. R. A. 571, 77 Pac. 134; *Thomason* v. *Oates,* 46 Tex. Civ. 383, 103 S. W. 1114; *Miller* v. *Jenkins,* 95 Ark. 144, 128 S. W. 856; *Lewis* v. *Agoure,* 8 Cal. App. 146, 96 Pac. 327; *Hayes* v. *O'Brien,* 149 Ill. 403, 23 L. R. A. 555, 37 N. E. 73.)

Norgaard is a purchaser in good faith, and for value. Appellant's contention that he "is clearly not a *bona fide* purchaser for value, because he does not disclose that he paid any cash on the purchase price at all," is puerile. Does the fact that a man does not pay in currency or its equivalent mean that he does not buy for value? Could the sale be set aside merely because a note or mortgage was given as the purchase price? The suggestion is preposterous. Norgaard being a *bona fide* buyer for value, the leasehold estate is necessarily destroyed. (*Williams* v. *Young,* 78 N. J. Eq. 293, 81 Atl. 1118; *Harwood* v. *Williams,* 161 Mich. 368, 126 N. W. 475.)

The Montana authorities cited by appellant to the effect that the injunction should have issued are not in point. In every case, the restraining order issued only when there was no question as to the interference by defendant with plaintiff's ownership or absolute right of possession. Here, Lunke neither owned nor had he the right to possess. In those cases there were repeated trespasses; here, there could be but one—the ousting of Lunke by Norgaard from Norgaard's land. There the damages

were difficult to estimate; here the damages were fixed by the agreement of Lunke and Egeland.

MR. JUSTICE SMITH delivered the opinion of the court.

On December 7, 1909, plaintiff and the defendant Egeland entered into a written contract whereby Egeland let and leased to plaintiff certain agricultural lands in Valley county for a term of three years. Plaintiff was the first party and Egeland the second party to the agreement. We quote certain parts thereof, *viz.*: "Said first party agrees to break fifty acres of land on said tract for the year 1910, if the season is such as to permit of its being done. Said first party shall have the right to repair any fences or buildings on said land, but second party is to pay for materials used. * * * It is understood and agreed that in case of sale on [of] land first party is to receive $3.50 per acre for newly broken land if sale is made before seeding, but land must be seeded same year as broken. * * * The party of the second part hereby reserves the right to sell said premises at any time, but in such case he [first party] shall receive and the said second party shall pay $1.50 per acre for any and all plowing, summer fallowing, or other work done by said first party on said land under this contract, the same to be in full of all claims or demands hereunder. * * * In case said second party desires to sell said land said first party shall have the first right to purchase said land."

This action was commenced on December 16, 1911, and in his complaint the plaintiff alleges, among other things, the following: "That said agreement [of lease] provided that said plaintiff agreed to and with said defendant Peter Egeland, to break and put under cultivation at least fifty acres of land in the year 1910 and that in case of sale of said premises before the expiration of said lease and agreement said plaintiff was to receive the sum of $3.50 for each and every acre so broken, and it was so understood and agreed between plaintiff and defendant Peter Egeland and was part of the agreement entered into by and between this plaintiff and defendant. That said plaintiff, under and by virtue of said agreement and lease, did during the year 1910 break and put

under cultivation on said land eighty-four acres of said tract, for which plaintiff was compelled to pay the sum of $3.50 per acre, or a total sum of $294, which sum is now due and owing to plaintiff herein.  *  *  *  Plaintiff further alleges that said agreement provided among other things that in case said first party repaired any buildings or fences on said land, said second party, being Peter Egeland, defendant, agreed to and with said plaintiff to pay for the materials used in repairing any fences or buildings on said described land; and that by virtue of said agreement and for the preservation and care of said property said plaintiff did during the years 1910 and 1911 expend upon and pay out the sum of $67 for repairing the buildings and fences, which sum is now due and owing the plaintiff herein, not having been paid by said defendant Peter Egeland, according to the terms of said agreement. Plaintiff further alleges that under and by virtue of said agreement said contract or lease provided that if said defendant Peter Egeland should decide to sell his property said plaintiff was to have the first opportunity and right to purchase said land and that said agreement was one of the considerations entered [entering] into the lease of said land by this plaintiff.'' It is then alleged that plaintiff was informed and believed that Egeland had entered into an agreement to dispose of the land to the defendant Norgaard ''contrary to the provisions and agreement contained in said lease,'' and that Egeland was to execute a so-called transfer of the property to Norgaard ''for the purpose of hindering and embarrassing the plaintiff in the quiet and peaceful enjoyment of said premises and without complying with the terms of this agreement as to sale of said property.'' The complaint continues: ''Plaintiff further alleges that defendant Peter Egeland has failed to pay the sums due under said agreement as herein set forth, although demand has repeatedly been made for the payment of said sums due and owing thereunder, but that defendant has refused, and still does refuse, to enter into any agreement or settlement, according to the terms of lease and agreement.'' Then follows the prayer, which reads as follows: ''Wherefore plaintiff prays that said defendants Peter Egeland and Jens Norgaard be en-

joined from interfering with or embarrassing or hindering said plaintiff in the quiet and peaceful possession of said premises during the term of the lease set forth in the complaint as exhibit 'A,' and that the agreements therein specified may be specifically performed; and that said defendant may, in the meantime, be restrained from bringing any action for ejectment against the plaintiff in order to turn him out or oust him from said premises; and that said plaintiff have and recover of said defendant all sums due and owing said plaintiff, as set out in this complaint, and according to the terms and agreements entered into by and between this plaintiff and defendant, Peter Egeland; and that said plaintiff have such other and further relief in the premises as the nature of this case shall require; and that said defendants, Peter Egeland and Jens Norgaard, be restrained, and each of them, from interfering with this plaintiff until the expiration of the lease and agreement entered into and herein set forth in plaintiff's exhibit 'A.' ''

No effort was made to obtain a temporary restraining order until April 9, 1912, when this plaintiff filed his affidavit setting forth that the defendants had broken into and entered upon the premises in question and injured the same and threatened to continue such trespasses. The affidavit concluded with a prayer for an order requiring the defendants to refrain ''from entering upon and trespassing upon said land and from interfering with the plaintiff's possession thereof, during the terms of said lease.'' Upon the complaint and this affidavit the district court issued a temporary restraining order as prayed for.

On April 15, 1912, the defendant Norgaard answered, among other things that he had purchased the land from Egeland on December 12, 1911, and ever since said date had been in possession of the whole thereof. He also alleged on information and belief that on or about December 11, 1911, Egeland offered to sell the land to the plaintiff, which offer was refused. Norgaard at the same time filed his affidavit, substantially the same as his answer, and prayed the court to dissolve the temporary restraining order. Lunke thereupon filed another affidavit wherein he alleged, *inter alia,* that his lease was duly recorded before the

alleged sale to Norgaard and the latter also had actual notice thereof.  Egeland also filed an affidavit in support of the motion to dissolve, narrating in detail a conversation which he claimed to have had with Lunke, wherein he informed him that he had a purchaser for the land at $3,500 and offered him the first right to purchase for the same amount, which he refused.

On May 6, 1912, the district court, on the pleadings and affidavits heretofore referred to, dissolved the temporary restraining order.  On application to this court it was continued in force pending an appeal from the order of dissolution.

The appellant properly contends, we think, that the only [1] question arises over the construction of the lease.  Counsel says in his brief: ''If the terms of the lease permitting Egeland to sell the property terminated the lease, then the order dissolving the injunction should be affirmed; but if such sale did not terminate the lease, under its terms, the order appealed from should be reversed.''

It will readily be seen that it was in the contemplation of the parties that Egeland might sell the property at any time, but if he did conclude to sell, appellant was to have the first right to purchase.  An issue is made in the affidavits as to whether appellant was in fact given this opportunity.  But is this issue material to a solution of the question presented by the appeal? We think not.  Let us analyze the complaint.  It attempts to state a cause of action for the recovery of two sums of money, *viz.:* .$294 for breaking 84 acres of land, and $67 for moneys paid out in repairing buildings and fences.  It is distinctly stated therein that the amount expended for breaking was to be paid ''in case of sale of said premises before the expiration of the lease.''  This undoubtedly refers to its expiration by limitation of time.  We think the allegation is justified by the terms of the lease: ''In case of sale of land first party is to receive $3.50 for newly broken land if sale is made before seeding.'' The complaint demands the sum of $3.50 per acre, thus impliedly treating the land as having been sold in accordance with the terms of the contract.  We also find in the complaint an allegation that by the terms of the lease plaintiff was to have the first

opportunity and right to purchase the land. But is any conclusion predicated upon this right or any breach of contract alleged? None whatsoever. This averment, as it stands, was mere surplusage. The allegations in paragraph 7 of the complaint, to-wit, "contrary to the provisions and agreement contained in said lease" and "without complying with the terms of this agreement as to sale of said property" are mere conclusions. The prayer is also significant. Demand is therein made for an order restraining the defendants from interfering with the possession of the plaintiff "during the term of the lease"; that "the agreements therein specified may be specifically performed"; that plaintiff have and recover all sums due and owing; and that Egeland and Norgaard "be restrained from interfering with this plaintiff until the expiration of the lease."

It is quite clear that this is not an action to enforce the specific performance of the covenant to give plaintiff the first right to purchase. The complaint does not contain the necessary allegations to state such a cause of action. A sale to him would undoubtedly merge and terminate the lease, yet he asks that his possession be protected under its terms and until the expiration thereof. The complaint, therefore, simply states a cause of action for two money demands. There is no question that Egeland reserved the right to sell the property, and thus terminate the lease, either to the plaintiff or some other person, and it is very clear to us that the complaint was framed on this theory. He has sold to his codefendant Norgaard and such sale terminated the lease. If plaintiff has a cause of action for specific performance he has not stated it. Neither has he stated a cause of action for breach of the contract except as to the two money demands to which reference has been made.

The lease also provides that the second party reserves the right to sell the premises at any time, "but in such case he [Lunke] shall receive and the said second party shall pay $1.50 per acre for any and all plowing, summer fallowing and other work done by said first party on said land, the same to be in full of all claims or demands hereunder." There was no necessity of reserving the right to sell if such sale was not to effect the lease.

Egeland had such right in any event. And the consideration moving to Lunke, of $1.50 per acre for all land plowed or fallowed "in full of all claims or demands," shows beyond doubt that it was to be paid as a remuneration to him for the loss of the unexpired portion of the lease. To the point that the lease was terminated by the sale, see *Wallace* v. *Bahlhorn,* 68 Mich. 87, 35 N. W. 834.

The order of the district court is affirmed and the restraining order heretofore issued by this court is vacated and set aside.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

