[Civ. No. 2879. Fourth Dist. Feb. 6, 1943.]

LOUISE GARETSON, Respondent, v. D. C. HESTER et al., Appellants.

Charles E. Burch, Jr., and Clarence Harden for Appellants.

Luce, Forward, Lee & Kunzel for Respondent.

GRIFFIN, J.—Action to terminate a lease. The property involved in this lease is 12.33 acres of land located on Camp Kearney Mesa, in San Diego County, just across the main highway which proceeds past the United States Marine Camp known as Camp Elliott. Plaintiff and respondent acquired the property in 1917, and has owned it continuously since that date. During all these years, up until the execution of the lease here involved, the property was brush land and had never been leased for any purpose. In 1936, the United States Marine Corps used a small parcel of land across the highway from the particular tract here involved as a summer tent camp. For many years the respondent had resided in Berkeley, California, and during all of the time involved in this action she was residing there. The appellant Hester had worked as a civilian employee for the post exchange at the Marine Corps base in San Diego and at the summer tent camp for about six years prior to the commencement of this action. In November, 1939, Hester started negotiations for the lease here involved. He had heard rumors that the government was going to erect a cantonment near this property. He went to see the appellant Blethen, who was in the business of selling and distributing beer. In the late summer of 1939 Hester told Blethen that he thought it would be a good business proposition to lease a small plot of ground and put up a beer hall. He asked Blethen to look up the owner of land adjacent to the area that the marines would occupy. Blethen, through a friend in a bank, contacted respondent

and offered her $50 per year for the lease of the land above mentioned. After some dealings it was agreed that she should receive $100 a year. A lease was drawn accordingly. She testified that at that time she did not have any idea that a camp was being erected in the vicinity. Hester drew up the lease. The appellant Charles Scott was named in the lease as lessee because he was going to loan some money for the erection of a building on the property. The lease was executed on April 5, 1940, between respondent Garetson and appellant Scott. It provided for a lease of one year and for rental at the rate of $100 a year in advance. It further provided that the lease was to be renewable at the option of the lessee until 1946, at the same annual rental. It further provided, and this provision is an important element of the controversy in this action, as follows:

"It is mutually understood and agreed that the property covered by this lease is subject to sale; however, the lessor agrees that in the event of an offer to purchase that lessee is to be given first opportunity to buy.

"It is further mutually agreed that lessee will be permitted at any time to remove any improvements or structures that he may make or build on the premises, and to quit and deliver up the premises to lessor or her agent or attorney peacefully and quietly, at the end of the term, in as good condition and order . . . as the same are now, and to pay the rent above stated for such further time as the lessee may hold the same. . . . "

On April 15, 1940, Scott signed a written lease of the premises to appellant Hester. His lease contained the same provisions as the original lease to Scott, and there was inserted in the lease after its execution, the following:

"It is mutually understood that this lease is renewable only until 1946, and that the property under this lease is subject to sale. However, owner has agreed with this lessor that in the event of an offer to purchase that this lessor is to be given first opportunity to buy, which right to purchase is hereby assigned to this lessee, D. C. Hester."

The above last-quoted provision was inserted in the lease by the parties four or five months after the execution of the lease by Scott, with the consent of Hester, and initialed by them. Hester went into possession of the property in April, 1940. It was testified that at the time of the execution of the

original lease the rental value of the property, taking into consideration the contemplated erection of Camp Elliott in the vicinity, was approximately $1.00 a front foot per month. The front footage on the highway was approximately 1,383 feet. Leases on the property on which Camp Elliott was constructed were taken by the government and a great building program ensued. Immediately upon securing the lease Hester commenced to erect structures on the leased property. Out of the sub-leases and out of the business conducted by the appellant Hester and his partner, $1,000 gross a month, from all sources, was being realized at the time of the trial. In November, 1940, the respondent came to San Diego and drove out to her land on Camp Kearney Mesa. She was amazed to find a cantonment being rushed to completion across the road from her property. In November, 1940, she learned for the first time that Hester was connected with the lease. In April, 1941, a real estate broker secured a purchaser for her property by the name of Stout. On April 23, 1941, escrow instructions were signed by Stout and deposited with the title company in San Diego. At about the same time an agreement to purchase the real property here under lease was signed by Stout. In this written offer Stout offered to pay $15,000 for the property, $7,500 thereof in cash with the balance to be secured by promissory note payable in installments of $250 or more each month. The contracts were submitted to the respondent for her signature but she did not sign for the reason that the contracts required her to deliver the property free and clear of all encumbrances, which she could not do until the encumbrance of the lease here in question was removed. Notice of the offer of purchase was given to defendants and appellants and they declined to purchase the property at the price offered by Stout. Notice of rescission of the lease was signed by the respondent and served upon the appellants on June 16, 1941, prior to the commencement of this action. After the introduction of evidence and numerous exhibits, the trial court found against the plaintiff and respondent as to her allegations in her complaint that the defendants and appellants obtained the lease by fraud, but did find that the said lease contained the provision as above quoted and that the parties to said lease intended by such provision in the lease that in the event the said lessor should receive a bona fide offer to purchase

the property described in the complaint, and in the further event that the lessor named in the lease should give to the said lessee an opportunity to buy said property at the same price offered, and in the further event that the lessee should fail and refuse or decline to purchase the said property at the said price, then and in that event the lease should be terminated and the lessor should be restored to possession of the property, free and clear of all liens and encumbrances placed thereon by the lessee, and free and clear of all right, title and interest of the lessee acquired through said lease or otherwise. The court further found, in regard to the lease from Scott, as lessor, to Hester, as lessee, that the parties to that lease intended by the inserted provision above quoted that respondent should have the privilege of selling the property referred to herein and that "in the event that the said plaintiff (the original lessor) should receive a bona fide offer for the purchase of said property, and in the further event that the said lessees, the defendants D. C. Hester and Charles Scott, were given the opportunity of purchasing the said property at the said offered price, and in the further event that the said lessees should decline or fail to purchase the said property at the said offered price, then and in that event, the said lease should be terminated." The court further found "that the plaintiff was unable to sell the property to . . . Stout until the leases referred to were canceled or rescinded . . . that the plaintiff was ready and willing to complete the contract of sale and to sell the property to Stout at the price mentioned except for the fact that she was unable to deliver the title to the said property free and clear of the encumbrance and lien of the leases referred to, and that the leases were clouds upon the title of the property and were an existing encumbrance thereon." In its judgment the court decreed that the leases be terminated and canceled effective on the 20th day of June, 1941, subject to the right of defendants to remove their improvements. It further decreed that the plaintiff was entitled to the possession of the property and the defendants were not. It quieted title to the property in favor of the plaintiff and gave judgment against Hester and Scott for $850 for rentals due and for costs.

The issue involved on this appeal is whether or not the parties to the leases intended by the language used that the leases should be terminated when an offer of purchase was

received and the lessee refused to take advantage of the option and purchase the property at the price named in the offer.

Appellants argue that there is no provision in the lease that the same should terminate upon the condition of lessees' failure to exercise the opportunity given them to purchase the property being leased; that there can be no termination of the lease without a forfeiting clause in it; that even so, the lease did not contemplate such termination except upon *an actual sale*, rather than an offer to purchase, and that the offer to purchase was not capable of specific performance in that it provided for liquidated damages in the event of its nonperformance on the part of the offerer. The interpretation given these instruments by the trial court, it seems to us, was not only fair and reasonable but an entirely proper construction that should be placed upon them. The lease clearly provided, and it is clear that the parties had in mind the fact that the property was "subject to sale," at all times. It was not the sale which was to terminate the leases, but a bona fide "offer to purchase" and the lessee was to be given the first opportunity to buy when such an offer was made. The leases further provided that at the "end of the term of lease," which term could inferentially mean when it was terminated at the end of the leasehold period or by failure of the lessee to exercise his option to purchase, he might be "permitted to . . . remove any improvements or structures" and to pay the rent for such further time as the lessees might hold the property. Obviously, the property was subject to sale without the insertion of any such clause. The lessor at anytime had the right to sell the property subject, of course, to the lease, and the effect of the sale would have been merely to substitute the vendee to all of the rights of the original lessor. (*Upton* v. *Toth*, 36 Cal.App.2d 679, 684 [98 P.2d 515].) The clause must, therefore, have an important intended meaning. The placing of the option in this clause indicated very clearly that it was the intention of the parties, and insisted upon by the lessees, the appellants herein, that the lessees be protected in the event of the sale and be given the first opportunity to purchase. If it was not intended by the parties that a bona fide offer to purchase with a subsequent refusal by lessees to purchase should terminate the leases, there would have been no occasion whatsoever for this

sort of an option. If the purpose of the clause was merely to grant an option to the lessees to buy the property during the life of the leases, it would not have been coupled with the clause reserving the property for sale. The two expressions together clearly indicate that it was intended by all parties that the sale of the land would terminate the leases. In no other way can the presence of the clause be explained. It certainly is a reasonable construction to believe that the parties intended to and did create a condition upon which a termination of the leases could be predicated. (*Upton* v. *Toth, supra; McVitty* v. *Flentge*, 34 Cal.App. 781 [169 P. 666]; *Carstensen* v. *Gottesburen*, 215 Cal. 258 [9 P.2d 831]; § 1069, Civ. Code; *Diepenbrock* v. *Luiz*, 159 Cal. 716 [115 P. 743, Ann.Cas. 1912C, 1084, L.R.A. 1915C, 234]; *Glenn* v. *Inouye*, 62 Cal.App. 259 [216 P. 418]; *Lunke* v. *Egeland*, 46 Mont. 403 [128 P. 610, 612]; § 1641, Civ. Code.)

The argument of appellants' counsel that the clause in question is a covenant and not a condition and that therefore its violation will not forfeit or terminate the leases but only give rise to a suit for damages is not tenable. It appears to us that the clause in question is a condition and not a *covenant* in the sense argued by counsel. (*Turner* v. *Gorton*, 247 Mich. 47 [225 N.W. 484]; *Johnston* v. *King*, 83 Wis. 8 [53 N.W. 28].)

The case of *Exchange Securities Co.* v. *Rossini*, 44 Cal. App. 583 [186 P. 828], relied on by appellants, was one where the court was considering a lease which contained a provision for termination of the lease upon sale after notice to the lessees, and it was there considering the claim by the *lessees* that the *lessor* had violated a ''covenant contained in the lease by failing to give them an opportunity to exercise the option for the purchase of the property.'' The court held that the *lessees* could not, by reason of such sale, at their option, terminate the lease or be absolved from the obligation to pay rent reserved therein. Such are not the facts here presented. Appellants cannot, in view of the evidence and findings of the court, contend that the offer to purchase was not a bona fide offer or that they were not given the first opportunity to purchase the property. The leases did not provide that it depended upon an actual sale of the property to a third party before the condition was exercisable but ''in the event of an offer to purchase'' and lessees should

be given the first opportunity to buy. The leases and the evidence submitted lead to the one conclusion that the parties intended, by the language used, to effect a termination of the leases upon the original lessor's receiving a bona fide offer of sale and the refusal of the lessees to exercise their option to purchase.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.