[Civ. No. 7314. Fourth Dist. June 29, 1964.]

DORRIS D. SEXTON, Plaintiff and Respondent, v. ORVAL W. NELSON, Defendant and Appellant.

John L. Mace for Defendant and Appellant.

Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, Rutan & Tucker, Garvin F. Shallenberger, Herbert W. Walker and Robert W. Driscoll for Plaintiff and Respondent.

COUGHLIN, J.—The plaintiff, as surviving lessor under a written lease, brought this action against the defendant, as lessee thereunder, to obtain a judgment declaring the lease terminated, for rental due, for an accounting, and for "such other and further relief as to the court may seem meet and proper in the premises." The complaint, denominated "Complaint for Declaratory Relief," was in two counts; the first thereof sought termination because of the defendant's failure to exercise an option to purchase; and the second count based the right to terminate upon alleged breaches of the lease

respecting rental payments. The court found that the failure to exercise the option was not a ground for termination; that the defendant was required and failed to pay $2,275 under a term of the lease providing for an increase in rent based upon an increase in the market value of the land leased; that the defendant also was required and failed to pay $1,438.55 under a term of the lease providing for the payment of 10 per cent of the net profit from the business conducted on the leased premises; that the defendant had violated a non-assignment provision of the lease; that, by virtue of each of the foregoing defaults, under the terms of the lease the plaintiff was entitled to terminate the same; that the lease was terminated on May 4, 1962, which was more than three weeks after filing of the complaint, on account of the aforesaid defaults in the payment of rent; and, also, that the lease had been terminated because of its transfer on or about October 31, 1958. On September 14, 1962, judgment was entered adjudging that the lease ''is hereby terminated as of the 4th day of May, 1962''; that the defendant pay the plaintiff the sum of $3,713.55 as ''rent due and owing''; and that defendant forthwith remove all improvements placed by him on the leased land. In due course the defendant appealed from the judgment.

On July 15, 1955, the plaintiff and her husband, since deceased, by an instrument in writing, leased to the defendant for a period of 10 years, approximately 6½ acres of a 12-acre parcel of land owned by them. Rental for the first three years of the lease was in the stated sum of $3,600. With respect to the additional seven years the lease provided: ''Rent to be $100.00 per month plus 3½% of such increase or decrease in land value to be determined by the average selling price of such land now valued at $5000.00 per acre. In the event this business requires additional property for expansion, we agree to lease our remaining bare land on the same terms.'' It also provided that if the lessors had an opportunity to sell any part of their ranch, i.e., the 12-acre parcel, the lessee ''will have the first option to purchase''; that lessor ''has the right to remove all improvements that are made under this lease''; and that lessee agrees that ''lessor . . . may enter to view and make improvements and to expel the lessee . . . if . . . shall fail to pay the rent as aforesaid. . . . '' The only provision with respect to a forefeiture declared: ''And should default be made in the payment of any portion of said rent, when due, and for ___ days

thereafter, the lessor ... , ... agent or attorney, may re-enter and take possession, and at ... option, terminate this lease.'' The document containing the aforesaid provisions was signed by all of the parties. Attached thereto was another document, also signed by all the parties, which referred to ''Additional Terms To Be Attached'' and, among other things, provided: ''This lease is not transferable and can be used only by Orval W. Nelson or immediate heirs. Harry E. or Doris Sexton is to receive 10% of the net profit computed annually.''

On October 31, 1958, the defendant allegedly transferred the lease to a corporation, the shares of stock in which were wholly owned by him.

On June 8, 1961, attorneys for the plaintiff, by letter, notified the defendant that, ''You have been in default in your performance under said lease, and our clients have instructed us to file suit unless you satisfactorily perform or vacate the premises,'' and stated, among other things '' . . . demand is hereby again made upon you as follows: 1. To pay to the lessors '10% of the net profit computed annually' from your business operation on said premises from July 15, 1955; ... 4. Pay the increased rent due under the formula provided of 3½% of the increase in land value over $5000.00 per acre. You were advised on July 14, 1959 of the appraisal at $7,000.00 resulting in a $2,000.00 excess, multiplied by said 3½%, making an increase in rent of $70.00 per month commencing August 1, 1959 to date. . . . Unless satisfactory arrangements are made and completed in writing on or before noon Thursday, June 22, 1961, we will proceed to file suit against you to terminate your lease on the premises and collect damages amounting to the sums mentioned above.''

On June 12, 1961, the attorney for defendant replied, by letter, advising that a profit and loss statement for the period January 1, 1956 to March 31, 1959, previously had been sent to one of the plaintiff's attorneys; enclosed a statement for the period November 1, 1959 to October 31, 1960; indicated that an additional statement for the period March 31st to November 1, 1959, would be sent to plaintiff in the immediate future; stated that no appraisal of $7,000 per acre had been received; and referred to a previous letter in which it was stated that three appraisals by the defendant indicated that the land was not worth over $5,000 per acre.

On July 19, 1961, the attorneys for plaintiff directed another letter to the attorney for defendant in which they acknowledged receipt of the June 8th letter; stated, ''it is clear

that your client has still failed to perform under the lease and therefore our client may reenter and take possession and terminate this lease, which our client intends to do for the reason stated above''; advised that the plaintiff had received an offer to buy the property for $10,000 per acre, that under the lease the defendant had first option to purchase the property at this price, and that plaintiff offered to sell to defendant at that price providing the offer was accepted by July 28, 1961; directed attention to the decision in *Garetson* v. *Hester*, 57 Cal.App.2d 39 [133 P.2d 863], and their interpretation thereof unless the lessee exercised such an option to buy, the lease ''as a matter of law, terminates''; and notified defendant and his attorney that the subject lease ''is to be terminated by our client at 5:00 P.M. on July 28, 1961 for failure to perform under the lease in accordance with our previous letter (and any future attempt hereafter to so perform will be refused), and for the further reason as stated above,'' and that if the defendant desired to purchase the property he should notify them immediately, and if he did not desire to purchase the property and did not vacate, they would ''proceed the following week to prepare the necessary complaint for unlawful detainer.''

The defendant did not thereafter accept the offer to purchase, nor pay any additional rental. However, he did continue to pay the $100 per month rental specified in the lease up to the time of entry of judgment, and the plaintiff accepted the same.

On April 4, 1962, which was approximately eight months after the foregoing exchange of letters, the plaintiff served on the defendant a document entitled ''Notice of Rescission of Lease'' by which the latter was notified that the subject lease ''is herewith rescinded, effective thirty (30) days from today''; that rescission was made in conformance with the plaintiff's previous notice that the property is being sold and the defendant's refusal to meet the offer made by the purchaser; and that the lease ''is further rescinded and cancelled because you are not now nor have you for many months prior hereto been paying the proper amount of rent in accordance with the appraised value of the property . . . and because you have not paid any percentage of your profits.'' Six days later, i.e., April 10, 1962, the complaint in the instant action was filed.

The trial court determined that the lease required the defendant to pay an additional annual rental in an amount

equal to 3½ per cent of the increase over $5,000 per acre in the market value of the land leased; that the market value of that land for the period of July 31, 1959, to June 30, 1960, was $7,000 per acre, for the period of July 1, 1960, to June 30, 1961, was $8,000 per acre, and for the period July 1, 1961, to June 30, 1962, was $10,000 per acre; that there were 6.5 acres of land in the leasehold estate; and that there was unpaid upon this additional rental the sum of $2,275. The court also determined that the lease required the defendant to pay further additional rental in a sum equal to 10 per cent of the net proceeds of the business carried on by the defendant on the leased premises, computed annually; that he received from such business for the fiscal year beginning January 1, 1958, and ending October 31, 1958, a net profit of $10,711.28; that the defendant's alleged successor, a corporation wholly owned by him, received from such business for the fiscal year beginning November 1, 1959, and ending October 31, 1960, a net profit of $3,674.30; and that there was unpaid on account of this additional rental the sum of $1,438.55. The findings heretofore referred to incorporate the foregoing determinations respecting the amount of unpaid rental and, with one exception hereinafter noted, are supported by substantial evidence.

The defendant asserts 24 grounds for reversal of the judgment, many of which are interrelated, some are meritorious, and others are not meritorious.

The judgment should be reversed for the following reasons:

1. The finding that "under the terms of said lease plaintiff is entitled to terminate said lease" by reason of nonpayment of the additional rental therein provided for, is contrary to law in that the lease does not contain an effective forfeiture provision;

2. The findings and conclusions that the lease terminated upon its transfer to the defendant's corporation, i.e., on October 31, 1958, are contrary to law;

3. The aforesaid findings and conclusions are in conflict with those that the lease terminated on May 4, 1962;

4. The finding that a transfer of the lease to the corporation wholly owned by the defendant was a violation of the nontransferability provision of the lease, under the circumstances of this case, is contrary to law;

5. The finding that under the terms of the lease the

256

plaintiff is entitled to terminate said lease by reason of the aforesaid transfer is contrary to law;

6. The judgment, insofar as the declaration thereof that the lease terminated as of May 4, 1962, is based upon a breach of the covenant therein against assignment, is not supported by the evidence or the law.

7. The finding that the defendant is indebted to the plaintiff for rental in the sum of $1,438.55 under the provision of the lease requiring the payment of 10 per cent of the profits of the defendant's business, ''computed annually,'' is not supported by the evidence or the law in that it includes a percentage of the profits of the business for a period less than a year;

8. The court erred in refusing to permit the defendant to introduce parol evidence to clarify certain ambiguous provisions of the lease.

9. That part of the judgment directing the defendant to remove the improvements placed upon the leased land by him is contrary to law.

■ The subject document is a printed form with unfilled blanks and typewritten additions. The prospective forfeiture provision therein was incomplete. As heretofore noted, this provision purported to give the lessor the right to reenter and take possession of the property and, at her option, to terminate the lease ''should default be made in the payment of any portion of said rent, when due, and for ___ days thereafter. . . . '' Obviously the parties did not agree upon the period of time during which a default should continue before the lessor might terminate the lease. (See *McNeece* v. *Wood*, 204 Cal. 280, 283 [267 P. 877].) As a consequence, the lease contained no effective provision authorizing a forfeiture or termination for failure to pay rent. ■ At common law, nonpayment of the rent prescribed by a lease would not authorize the lessor to declare a forfeiture of the lessee's rights thereunder, and to terminate the same, unless a provision therein conferred such authority. (*Chipman* v. *Emeric*, 3 Cal. 273, 283.) ■ In California, by statute, a lessor is given the right to declare a forfeiture and terminate a lease for nonpayment of rent, even though the lease contains no provision authorizing such. (*Chipman* v. *Emeric*, *supra*, 3 Cal. 273, 283; *McCarty* v. *Raso*, 102 Cal.App.2d 909 [228 P.2d 577].) The exercise of this right is effected through an action for unlawful detainer and compliance with the procedural prerequisites thereto. (Code Civ. Proc., § 1161, subd. 2.) ■ The

instant complaint does not allege facts constituting a cause of action for unlawful detainer; seeks only a declaration with respect to the status of the lease; purports to set forth an action for declaratory relief; actually contains allegations supporting an action in ejectment; but does not seek possession of the leased premises. The judgment conforms to the complaint; declares the lease terminated; awards rental damages; but does not order delivery of possession to the plaintiff. In her letter of July 19, 1961, the plaintiff indicated her intention ''to prepare the necessary complaint for unlawful detainer,'' but she did not do so. The complaint at hand does not allege compliance with the provisions of section 1161, subdivision 2, of the Code of Civil Procedure requiring service upon the tenant of a three days' notice, in writing, demanding payment of the rent due or possession of the property. The plaintiff and the court proceeded upon the theory that the subject lease contained an effective forfeiture provision. This was not the fact. The theory thus adopted was erroneous.

One of the major complaints of the defendant is that his refusal to pay rent was based upon his interpretation of ambiguously phrased provisions of the lease which became certain only by court decree, and that the instant adjudication deprived him of the right to relief from forfeiture which he would have had, by virtue of the provisions of section 1179 of the Code of Civil Procedure, if the plaintiff had sought a forfeiture under the unlawful detainer statute.

The plaintiff further contends, in substance, that in any event she was entitled to terminate the lease because of the defendant's violation of the provision respecting nontransferability, the breach of which, she claims, authorized a forfeiture without any demand for compliance, or the existence of an effective forfeiture clause. In this regard, the plaintiff relies upon findings and conclusions of the court that the defendant transferred the lease to a corporation; that this transfer was in violation of the provisions against transferability, even though the corporation was wholly owned by the defendant; that the ''lease terminated upon said transfer''; that under the terms of the lease ''the plaintiff is entitled to terminate'' the same because of that transfer; and that ''defendant terminated said lease by reason of his transfer thereof'' to said corporation. The latter determination was set forth as a conclusion of law.

No allegations with respect to this subject were pleaded in

the complaint. Toward the end of the trial the plaintiff moved for and obtained permission to amend to conform to the proof by including as an issue whether the defendant had terminated the lease by transferring it to the subject corporation. No amendment actually was filed.

A lease is not terminated ipso facto upon its transfer in violation of a provision therein declaring its nontransferability. (*Guerin* v. *Blair*, 33 Cal.2d 744, 746 [204 P.2d 884]; *People* v. *Klopstock*, 24 Cal.2d 897, 901 [151 P.2d 641]; *Chapman* v. *Great Western Gypsum Co.*, 216 Cal. 420, 427 [14 P.2d 758, 85 A.L.R. 917]; *Martin* v. *Auerbach*, 94 Cal. App.2d 222, 225 [210 P.2d 321]; *Northwestern Pac. R.R. Co.* v. *Consumers etc. Co.*, 50 Cal.App.2d 721, 723 [123 P.2d 872].) The determination of the trial court in the instant case that a transfer of the lease from the defendant to his corporation terminated the lease clearly is erroneous.

The breach of a provision against assignment confers upon the lessor, at his election, the right to effect a forfeiture of the lease in the manner authorized by law. (*People* v. *Klopstock, supra,* 24 Cal.2d 897, 901; *Chapman* v. *Great Western Gypsum Co., supra,* 216 Cal. 420, 427; *Buchanan* v. *Banta,* 204 Cal. 73, 76 [266 P. 547].) If the lessor does not elect to declare a forfeiture because of such a breach, the assignment in question is valid. (*Ibid.*) If he does elect to declare a forfeiture he must give notice of his intention in the premises. (*People* v. *Klopstock, supra,* 24 Cal.2d 897, 901; *Northwestern Pac. R.R. Co.* v. *Consumers etc. Co., supra,* 50 Cal.App.2d 721, 723.) In the case at bar, there is neither finding nor evidence that the lessor gave the defendant any notice of her intention to declare a forfeiture of the subject lease because of the alleged violation of the provision therein against assignment. Under these circumstances, the judgment of the trial court that the lease "is terminated" as of May 4, 1962, cannot be sustained on the theory that the lease had been forfeited because of a breach of the provision in question.

In addition, we also have concluded that the transfer of the subject lease to the corporation wholly owned by the defendant, under the circumstances of this case, did not constitute a breach of the provision therein that the "lease is not transferable and can be used only by Orval W. Nelson or immediate heirs."

A clause prohibiting the assignment of a lease does not foreclose every transfer of the lessee's rights thereunder.

(Generally see *Trubowitch* v. *Riverbank Canning Co.*, 30 Cal. 2d 335, 343-346 [182 P.2d 182].) Where a transfer results merely from a change in the legal form of a business and does not affect the interests of the party protected by the nonassignable provisions of the lease, a breach of that provision does not occur. (*Trubowitch* v. *Riverbank Canning Co., supra*, 30 Cal.2d 335, 344.) In accord with the foregoing general rule, it has been held that a lessee's transfer of his lease to a corporation formed and wholly owned by him, does not violate a provision thereof against assignment. (*Liberty Nat. Bank of Chicago* v. *Pollack*, 337 Ill.App. 385 [85 N.E. 2d 855]; *B. J. Galligan & Co.* v. *P.S.M., Inc.*, 116 Misc. 754 [191 N.Y.S. 523, 526].) In the case at hand, the evidence establishes without conflict that the defendant owned all of the stock in the subject corporation; continued to operate and manage the business occupying the leased premises; and used the corporate structure only as a tax advantage device. Under the facts here, any transfer of the lease from the defendant to his corporation was a transfer in form only and not in substance. The interest of the plaintiff was not affected thereby. Her argument that the change in the legal form of the business entity affected the amount of the net profit obtainable therefrom is not supported by the evidence. The argument thus advanced is based upon an accounting practice involved in the changeover from the individual to the corporate entity, the use of which reflects a lack of net profit from the business, but the court refused to accept this accounting practice; disregarded it in making the computation prescribed by the lease; and awarded rent on the basis of its nonapplicability. What constitutes "net profit" under the lease is a question of law and fact unaffected by the defendant's operation of his business under a corporate rather than an individual ownership where, for all practical purposes, he and the corporation are one and the same entity. Furthermore, the subject provision contemplates only a restriction against an assignment that would result in a use of the leased premises other than by the defendant or his immediate heirs. Under the facts here, in effect, the defendant continued in the exclusive use of the leased premises after he formed his corporation; continued to control, operate and manage the business occupying these premises; and, because he was the exclusive owner of the corporation's shares of stock, his control was tantamount to ownership of the business. The decision in *Weintraub* v.

*Weingart,* 98 Cal.App. 690, 697 [277 P. 752], cited by plaintiff, is not in conflict with the foregoing conclusions as in that case there was evidence supporting an implied finding that the corporation to which the transfer had been made was not wholly owned by the lessee.

Under the additional rent provision requiring the payment of "10% of the net profit computed annually" the court found that the defendant received "a net profit of $10,711.28 for the fiscal year beginning January 1, 1958 and ending October 31st, 1958." Obviously the period from January to October, both inclusive, is not a year. The provision in question directs that the net profit which is the basis for additional rental shall be "computed annually." The net profit for any 12-month period, including the aforesaid 10 months, might have been less than $10,711.28, in which event the amount of rent payable on account thereof would have been less. The finding and conclusion of law incorporating 10 per cent of the sum of $10,711.28 in unpaid rental are contrary to the provisions of the lease. The 10 per cent of net profit provision is subject to interpretation. Reasonably interpreted, it requires that a computation of the net profits not only be made once a year but also for the period of a year. However, when the year begins and ends is not designated. The lease is dated July 15, 1955. The net profits computed annually thereafter would be the net profits from July 15th of one year to July 14th of the next, otherwise some period of time during the tenancy would not be accounted for in making the required computation. For example, if a calendar year period were used, the original period from July 15th to December 31st would have been excluded. On the other hand, in reply to the demand for payment of the 10 per cent of net profit additional rental, the defendant submitted, among others, a statement for the period from November 1, 1959, to October 31, 1960. In apparent reliance upon the defendant's interpretation that the annual computation provided for should consider the profits made during the aforesaid period, the court made a finding accordingly. The defendant may not complain that the period selected for annual computation was the period selected by him. However, on a retrial of this matter, the court may make such determination in the premises as the evidence before it may indicate.

The findings with respect to the date of termination of the lease are in irreconcilable conflict. As noted, the court found

that the lease was terminated by a transfer occurring on October 31, 1958, and also found that the lease terminated on May 4, 1962. Rental damages were awarded in reliance upon termination as of the latter date. However, our determination that the finding as to termination because of an alleged transfer of the lease is not supported by the evidence at hand, or the law applicable thereto, renders unnecessary any further consideration of the effect upon the judgment of the aforesaid conflicts in the findings.

The court determined that the provisions of the lease were not ambiguous or uncertain in any material respect; construed them upon a consideration of the lease as a whole; and refused to permit the defendant to introduce parol evidence concerning the intention of the parties with respect to the meaning of those provisions. The defendant contends that the action of the court in the premises was error. In some respects this contention is meritorious and in others it is not.

Among other things, the defendant claims that the provision respecting the payment of additional rental in an amount equal to 3½ per cent of the increase in "land value to be determined by the average selling price of such land now valued at $5000.00 per acre" does not refer to the market value of the land leased but to the available selling price of the 5½ acres retained by the lessors, and of other land in the vicinity. The plain language of this provision requires the interpretation placed thereon by the court. It seems obvious that the terms "increase . . . in land value" and "the average selling price of *such* land now valued at $5000.00 per acre," refer to the land that is the subject of the lease. (Italics ours.) The only land described or identified in the lease is the land that is the subject of the lease. It is this land that the parties agreed was of the value of $5,000. It is the "selling price" of "such" land that is the basis for an increase in rent. It would be absurd to increase the amount of rent for the use of that land because of an increase in the value of some other land. The term "selling price" is layman's language for "market value," viz., the price at which property may be sold on the market. The defendant places importance upon the use of the term "average"; urges that it must refer to a number of sales; and concludes that such sales must be of other property, as the land leased would not have been sold. However, by the provisions in question the parties agreed that, as of the date of the lease, the land was valued at $5,000 *per acre,* and it

may have been within their contemplation that in the future each acre of land might have a different "selling price," i.e., market value, and the term "average" was used to obtain a single "selling price" per acre by obtaining an average of the different "selling prices."

The defendant also claims that the court erred in determining that the provision requiring the payment of 10 per cent of the defendant's net profit computed annually imposes such payment in addition to the rental theretofore specified in the lease; that this provision should be construed in accord with what he believed is the ordinary provision of a percentage lease wherein a lessor agrees to pay that amount by which a percentage of his net profit exceeds a guaranteed rental; and that, under such a construction, the defendant would be required to pay the plaintiff only that part of the 10 per cent of the former's annual net profit which exceeded $1,200, i.e., the amount of rental for a year under the $100 per month provision. The lease at hand is not subject to the construction urged. The interpretation placed upon the 10 per cent net profit provision by the court was proper. However, this provision is subject to interpretation by parol evidence for the purpose of determining the subject of the 10 per cent net profit. The provision as written does not indicate that the lessor is to receive 10 per cent of the net profit of the business conducted on the leased premises, although the parties seem to have proceeded on this basis. This is a matter subject to parol evidence. The court, using parol evidence, adopted the interpretation seemingly adopted by the parties in their correspondence, but denied the defendant the opportunity to introduce testimony respecting the circumstances and conversation that were a part of the transaction culminating in the execution of the lease. As heretofore noted, the provision in question also is subject to interpretation by parol evidence for the purpose of determining what annual period of time should be used in computing the additional rental based on net profits.

Plaintiff did not appeal from the judgment but, nevertheless, contends that the trial court erred in concluding that the lease was not terminated upon the failure of defendant to exercise the option to purchase the leased premises, the terms of which heretofore have been set forth; that, under the undisputed evidence and law in the premises, the lease terminated at the time plaintiff had an opportunity to sell the leased premises and the defendant, after notice of this fact,

did not exercise his option to purchase; and, for this reason, the judgment declaring the lease terminated as of May 4, 1962, should be sustained.

As heretofore noted, the plaintiff's contention is based upon the decision in *Garetson* v. *Hester,* 57 Cal.App.2d 39 [133 P.2d 863]. However, the facts in the cited case are not analogous to those in the instant case and the decision therein is not applicable here. The option provision in the instant lease merely gave the lessee a first option to purchase in the event the lessors were able to sell ''any part'' of the ranch. It did not require the lessee to purchase, nor provide, expressly or by implication, that the lease should terminate upon a sale to another. The contention in question is without merit.

The lease provided that: ''Lessor has the right to remove all improvements that are made under this lease.'' The judgment directed: ''That defendant remove forthwith all improvements placed by defendant upon the leased land.'' The defendant objects that he is required to remove the improvements in question. The plaintiff concedes that this objection is well taken. The inclusion of this requirement as a part of the judgment was error.

The judgment is reversed.

Griffin, P. J., and Brown (Gerald), J., concurred.

A petition for a rehearing was denied July 20, 1964, and respondent's petition for a hearing by the Supreme Court was denied August 27, 1964.