No. 12898

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

DERRALL PIPKIN and BETTY PIPKIN,
husband and wife,

Plaintiffs and Respondents,

-vs-

GERALD CONNOLLY and EMILIE CONNOLLY,
husband and wife,

Defendants and Appellants.

---

Appeal from:  District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Lee Overfelt argued, Billings, Montana

For Respondents:

Joseph T. Swindlehurst argued, Livingston, Montana
Huppert and Swindlehurst, Livingston, Montana

---

Submitted:  May 6, 1975

Decided: JUL 18 1975

Filed: JUL 18 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

This is an appeal from a judgment of the district court, Sweet Grass County, sitting without a jury, holding defendants' lease terminated upon failure to exercise their right of first refusal to purchase farmland and further that defendants were accountable to plaintiffs in unlawful detainer.

Defendants Gerald and Emilie Connolly, husband and wife, and plaintiffs Derrall and Betty Pipkin, husband and wife, entered into an agricultural lease agreement drawn by defendants' attorney John R. Glenn, Esq. The lease was for a five year period beginning March 1, 1973 and terminating February 28, 1978. The terms provided that Pipkins pay $4,000 a year as rent for the property. Connollys reserved the dwelling house located on the property for their personal use.

Pipkins further agreed to give Connollys the right to meet any offer to buy the farmland and Pipkins agreed to accept the Connollys' offer which would meet any offer or offers to buy from any source.

On March 28, 1974, Pipkins received a written offer for the purchase of the premises, together with earnest money of $10,000 from Rainbow Ranch, Inc. of Fort Collins, Colorado, upon these terms:

> "The total purchase price is Two Hundred Thousand Dollars ($200,000.00) payable as follows:
>
> "Sixty Thousand Dollars ($60,000.00) paid down;
>
> "The Balance payable over a period of Thirty (30) years, with interest amortized out at Six per cent (6%);
>
> "Contract for Deed to be carried by Seller;
>
> "Interest to commence as of date of possession;
>
> "Earnest money of Ten Thousand Dollars ($10,000.00);
>
> "The closing date of the sale shall be on or before June 1, 1974."

On April 25, 1974, Pipkins served upon Connollys notice of the offer, giving them the right to meet the offer on or before May 31, 1974. Connollys failed to accept the offer or to deliver possession of the premises, as requested. Pipkins brought action in unlawful detainer to recover possession of the premises. Connollys cross-complained praying for the court to amend the lease to read as they claim was the original intention of the contracting parties--that any sale of the farmland was subject to the lease. The proposed sale was not completed due to the pending litigation.

Pipkins insist they wanted the right to sell the property at anytime and that the lease would terminate upon such sale. The lease did not provide for its termination upon sale of the premises, but provided in pertinent part:

> "The Landlords [Pipkins] agreed to give Tenants [Connollys] the right to meet any offer to buy the above described real estate and Landlords agree to accept Tenants' offer which does meet an offer, or offers, to buy from any source whatsoever.
>
> "* * *
>
> "* * *The Tenants recognize Landlords' right to sell the above described real estate during the term of this lease or any future lease providing that Tenants be given the rights hereinbefore mentioned."

Mr. Glenn, Connollys' attorney, testified there was no provision made for forfeiture of the lease for failure to exercise the right of first refusal because it was fully understood in his discussions with the parties that the land could be sold, but Connollys would remain in possession under the lease.

In its findings of fact the district court found: that at the time the lease was made Pipkins strongly emphasized the fact that they wanted to reserve the right to sell the farmland and upon such sale the lease would terminate; Pipkins had received a bona fide offer for the purchase of the premises from Rainbow Ranch, Inc.; that Connollys refused to meet the offer; and, therefore, the lease was terminated on June 1, 1974. In its conclusions of law the court

- 3 -

held that the Connollys unlawfully detained the premises since June 1, 1974, and awarded Pipkins judgment for treble damages. Connollys' cross-complaint was denied.

Connollys present nine issues for this Court's review. Briefly stated, the issues are:

1. Did the district court err in finding that the lease terminated upon the sale of the farmland and Connollys' failure to exercise their right of first refusal?

2. Did the court err in admitting an unacknowledged buy-sell agreement into evidence as proof of an offer to buy the farmland in question?

Lessees Connolly argue that in light of the testimony of the attorney who drew up the contract, Mr. Glenn, there was no such intent on the part of the parties that the lease would terminate upon the sale of the land; that lessors Pipkin testified Connollys wanted a lease so that they could borrow money from the bank and, in light of the fact the law does not favor forfeiture, Pipkins have failed in their burden of proof, therefore the district court erred in finding for them.

The lease was drawn by the attorney for Connollys. The terms of the lease when ambiguous will be construed most strongly against him whose words they are. Bickford v. Kirwin, 30 Mont. 1, 75 P. 518.

The lease clause allowing the sale of the farmland and giving lessees the right of first refusal is, at best, incomplete as it relates to the problem here. If all Pipkins wanted to do was to be able to sell their farmland, subject to the leasehold, there would have been no need for the clause. Connollys stated they included the clause because Pipkins demanded it, even though in their opinion it was not necessary. Connollys argue that if the lease could be terminated upon the sale of the farmland, what bank would lend money on that type of lease? Pipkins state they were adamant about being

- 4 -

able to sell their farmland anytime they wanted to, and not have the sale subject to the lease. Pipkins also point out that Connollys agreed that they could move from California to the farmland, and that would terminate the lease although that was not included in the lease. That type of agreement Pipkins argue is contradictory to the type of lease Connollys claim they received.

In Lunke v. Egeland, 46 Mont. 403,410, 128 P. 610, while construing an agricultural lease which contained additional elements, this Court did reach the problem of the effect of a clause giving the lessor the right to sell and the lessee the right of first refusal. The Court held:

> "There was no necessity of reserving the right to sell if such sale was not to affect the lease. [Lessor] had such right in any event."

The California Supreme Court in Garetson v. Hester, 39 Cal.Rptr. 410, 133 P.2d 863, 864, 865, construed this language of the lease involved there:

> "'It is mutually understood and agreed that the property covered by this lease is subject to sale; however, the lessor agrees that in the event of an offer to purchase that lessee is to be given first opportunity to buy.'"

The Court stated:

> "Obviously, the property was subject to sale without the insertion of any such clause. The Lessor at any-time had the right to sell the property subject, of course, to the lease, and the effect of the sale would have been merely to substitute the vendee to all of the rights of the original lessor. * * * The clause must, therefore, have an important intended meaning. The placing of the option in this clause indicated very clearly that it was the intention of the parties, and insisted upon by the lessees, the appellants herein, that the lessees be protected in the event of the sale and be given the first opportunity to purchase. If it was not intended by the parties that a bona fide offer to purchase with a subsequent refusal by lessees to purchase should terminate the leases, there would have been no occasion whatsoever for this sort of an option. If the purpose of the clause was merely to grant an option to the lessees to buy the property during the life of the leases, it would not have been coupled with the clause reserving the property for sale. The two expressions together clearly indicate that it was in-tended by all parties that the sale of the land would terminate the leases. In no other way can the presence of the clause be explained."

- 5 -

Connollys allege the language of the lease in question here, and the language of the leases in _Lunke_ and _Garetson_ are distinguishable. They point out there was a provision in _Lunke_ for payment to the lessee upon termination of the lease for the crops planted. In _Garetson_ there was additional language in the lease which Connollys argue make that lease different from the one in question here, it provided:

> "The leases further provided that at the 'end of the term of lease,' which term could inferentially mean when it was terminated at the end of the leasehold period or by failure of the lessee to exercise his option to purchase, he might be 'permitted to * * * remove any improvements or structures' and to pay the rent for such further time as the lessees might hold the property." (Emphasis added.)

Connollys argue this language, construed along with the rest of the lease in _Garetson_ made it possible to interpret the contract as being one in which the parties intended that failure to exercise the right of first refusal could amount to loss of the lease.

True, each lease must be construed separately, depending upon its own language. However, the instant case, _Lunke_ and _Garetson,_ all involve a lease which includes a clause reserving the right to sell, but makes no mention of the termination of the lease. It is the language of that clause we are interpreting here. It is that language which was interpreted in _Lunke_ and _Garetson._ In _Garetson_ the California court did not rely on the emphasized language cited hereby Connollys to reach its conclusion. Too, although in _Lunke_ the reimbursement for acreage planted clause was an added factor in the court's reaching its decision, that court reiterated our major premise here, that there was no need for the clause reserving the right to sell if such right was subject to the lease. Therefore, _Lunke_ and _Garetson_ cannot be distinguished on the point in issue here.

Connollys condemn the harsh forfeiture and lack of any consideration given for their growing crops or improvements. In this regard the Court notes the notice to the Connollys of April 25,

1974, advises that they would have until May 31, 1974 to exercise their right to purchase and remit a down payment of $60,000; that the property would be sold on June 1, 1974, if Connollys did not exercise their right to purchase, and they would be expected to deliver up peaceful possession on or before June 1, 1974. No further demand from Pipkins or their successor in interest was ever made. Suit in unlawful detainer was filed June 12, 1974. Connollys technically were holding over after midnight May 31, 1974.

Section 93-9703(2), R.C.M. 1947, provides relief for this type of forfeiture. While all other tenancies speak of holding over without permission of the landlord, and this Court is mindful of the cases holding three day notice to pay or quit satisfies "without permission" impliedly, agricultural leases require demand after holding over after the expiration of the lease term. This problem was treated by this Court in a case involving a lessee who attempted to exercise an option to purchase after the term of his lease had expired. In Miller v. Meredith, Hill and Whitfield, 149 Mont. 125, 129, 423 P.2d 595, the Court stated:

> "Under the common law the holdover tenant was considered a trespasser and in order to get away from the harshness of such a rule, and to conform to agricultural practices of the state, our Code specifically provided for agricultural lessees in section 93-9703, R.C.M. 1947. Under this section a holdover tenant for sixty days without notice who invests time and seed will not lose this investment to the landlord. However, the statute gives him no more than the right to harvest his crop to protect his investment and protects him <u>from liability in an action for unlawful detainer.</u>" (Emphasis supplied.)

As stated heretofore, no notice or demand was ever given Connollys after the expiration of the lease. They remained on the property sixty days after the lease terminated and planted their crops. Therefore, under section 93-9703(2), they had a right to harvest those crops and are protected from liability for unlawful detainer.

Finally, concerning whether the buy-sell agreement has to be acknowledged before it can be admitted into evidence, Connollys

argue that such agreement has to be acknowledged to be admitted into evidence to ascertain whether the signer is the president of the Rainbow Ranch Inc., and whether he has the authority to bind the corporation to the contract to purchase as provided in section 39-117, R.C.M. 1947.

Testimony of Al Whiteside, the real estate broker involved, establishes that he witnessed the signature of Ronald W. Miller, President of the corporation, and Coreen M. Miller, Secretary-Treasurer. Under section 93-1101-12, R.C.M. 1947, that was sufficient foundation to admit the contract into evidence. Since neither party to the contract challenges the contract, we see no reason to entertain any challenge to its authenticity.

The judgment of the district court is affirmed as to its conclusions of law Nos. 1, 2, and 5 regarding termination of the lease. Judgment is reversed as to its conclusions of law Nos. 3 and 4, as they relate to unlawful detainer and damages. The cause is remanded to the district court to enter judgment accordingly.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -