Ethel Rich MARSHALL,
Plaintiff/Appellee,

v.

Don SUMMERS, and Ron Bottorff, a partnership, d/b/a Summers Lumber & Timber Co., Defendants/Appellants,

and

William J. Pratt, Jr., Nominal Defendant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 29, 1996.

Permission to Appeal Denied by
Supreme Court July 15, 1996.

Kenneth F. Scott, Tune, Entrekin & White, Nashville, for Plaintiff/Appellee.

Jeffrey Zager, Mary Ellen Morris, Trabue, Sturdivant & DeWitt, Nashville, for Defendants/Appellants.

## OPINION

TODD, Presiding Judge.

The captioned defendants, Don Summers and Ron Bottorff, partners doing business as Summers Lumber & Timber Co., have appealed from a Rule 54.02 partial summary judgment interpreting a provision of a lease between the captioned plaintiff as lessor and the appellants as lessees. The other captioned defendant is not a party to this appeal.

On April 1, 1985, the plaintiff-appellee, as lessor, and the defendants-appellants as lessees, entered into a lease agreement relating to commercial property for use as a lumber shed and yard. The lease was for a term of five years, ending on March 31, 1990, with option for a five year renewal, "terms and conditions to be agreed upon at that time by both parties."

At some time in 1987, the parties to the lease executed an undated "Addendum to Lease Agreement," containing the following provisions:

1. Lessees were granted options to extend the lease by four successive renewals of five years each at a 10% increase in rent during each renewal period.

2. Lessees were permitted to construct additional buildings and to remove same at the expiration of the lease.

3. Articles IV and VII of the amendment were verbatim as follows:

### IV.

RIGHT OF FIRST REFUSAL. Should LESSOR, during the lease term (including any option term) or any extension thereof, elect to sell all or any portion of the leased premises, whether separately or as a part

of the larger parcel of which the leased premises are a part, the *LESSEE shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer.* Upon the *LESSEE's failure to meet such bona fide offer within 60 days after notice* thereof from the LESSOR, the *LESSOR shall be free to sell the premises or portion thereof to such third person in accordance with the terms and conditions of his offer.* (In handwriting, the following: In the event of a sale on subject property, an appraisal will be made by both Lessor and Lessee. /s/ Initials "DTS," "RB," "ERM," if no offer but she wanted to give.)

## VII.

REMEDY FOR BREACH OR DEFAULT. In the event of a breach or default of any term or condition of THE LEASE or the ADDENDUM TO LEASE the aggrieved party shall have remedy by *specific performance or indemnification of damages* and/or both, if appropriate under the circumstances. Further, the *aggrieved shall be entitled to recover all expenses and cost* in remedying the breach or default, *including court cost and attorney fees.* (Emphasis supplied.)

On June 1, 1994, the lessor entered into a "Real Estate Purchase Agreement" with William J. Pratt, Jr., regarding the leased property. Said agreement contained the following provisions:

11. CLOSING: Closing shall be held within ninety (90) days from the Effective Date, at which time all paper necessary to deliver good and marketable title shall be delivered and exchanged. Closing shall be held at a mutually acceptable time to be designated at least ten (10) days prior to the closing date. *Possession of the property by Buyer shall be given on the date of the closing.* Time is of the essence as to all terms of this Contract.

. . . .

13. CONFIDENTIALITY: Seller, Buyer and representatives of Centennial, Inc. acknowledge the confidentiality of this transaction contemplated herein and agree hereby not to disclose to third parties any of the term or conditions of this Contract.

14. CONTINGENCY: This sale is contingent upon the Seller terminating the lease presently in force on this property. *Should the lease not be terminated then this Contract will become null and void* and all earnest money will be returned to the Buyer.

. . . .

16. RIGHT OF FIRST REFUSAL: The lease mentioned in paragraph 14 above gives the Lessee a right of first refusal to accept any offer to purchase the subject property. Therefore, Seller's acceptance of this Agreement is subject to said Lessee's right of first refusal. (Emphasis supplied.)

On September 23, 1994, lessees notified lessor that they were exercising their option of renewal from April 1, 1995, through March 31, 2000.

On December 22, 1994, lessor sent the following notice to lessees:

My lease with you provides that you as Lessee shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer. Upon your (Lessee's) failure to meet such bona fide offer within 60 days after notice thereof from Lessor, the Lessor shall be free to sell the premises or portion thereof to such third person in accordance with the terms and conditions of the offer.

I am enclosing an offer to purchase the premises. This offer is from William J. Pratt. The purchase price is $4.00 per square foot. The terms of the offer provided that the sale is contingent upon the termination of your lease. In the event you fail to timely exercise your right of refusal and elect not to purchase the property pursuant to this offer, I intend to close on the offer. *Since the terms of the offer provide for termination of your lease, the lease would be terminated upon the date of closing.*

Please consult your lease for the manner of responding to this notice and let me know what you wish to do. (Emphasis supplied.)

On March 19, 1995, the lessor signed a modification of the purchase agreement containing the following:

WHEREAS, the closing date as provided for in said Purchase Agreement is March 21, 1995 and the parties desire to extend said date;

NOW THEREFORE, for and in consideration of the premises and other good and valuable consideration the parties agree as follows:

1. The closing date shall be extended to and shall become June 21, 1995 or 10 days after Summers Lumber and Timber Company vacates its possession of the subject property, whichever occurs first.

On March 20, 1995, counsel for lessor wrote lessee as follows:

Because you have not responded within the required sixty days of her December 16, 1994, letter notifying you of a bona fide offer to purchase the lease premises, she plans to proceed with the sale of the property to William J. Pratt, Jr., the offeror.

Let this letter serve as notice that the lease will be terminated effective May 1, 1995, and you should vacate the premises by June 1, 1995. If you intend to remove any buildings, structures or other improvements you have constructed, you should do so by June 1, 1995. This is necessary so that she can arrange a closing with the purchaser. I hope that this can be accomplished without undue difficulty.

You both knew since the inception of the lease that this situation could and would likely arise, and I trust that you will not take any action that will jeopardize this unique opportunity or cause her any undue damages or expenses. Your failure to respond to her December 16 letter has already necessitated an extension of the closing date with the purchaser. The extension of the closing date will permit you to remove the buildings by June 1, 1995, if you desire, however, she does not have much flexibility beyond that date.

Please respond in writing within five days of receipt of this letter regarding whether you can or will vacate by June 1, 1995.

If I can provide additional information, please advise.

On May 17, 1995, the lessor filed the present suit, setting out the foregoing facts and praying:

1. For an injunction requiring lessees to vacate by June 21, 1995.

2. For a declaration that lessees had failed to exercise their right of first refusal to match an offer to purchase the property.

3. For an order terminating the lease on May 1, 1995.

4. For a declaration that "plaintiff is free to exercise her free right to sell the real estate that is subject to the Lease Agreement between the parties."

5. Damages.

The lessees answered admitting the facts but denying that the "First Refusal" agreement was intended to or did bind them to vacate the premises as a part of matching a purchase order.

Lessees counter-claimed for a declaratory judgment that:

1. The failure of lessees to offer to purchase did not result in a termination of the lease.

2. The lease remains in full force and effect.

Lessor moved for partial summary judgment "on the issue of whether the lease between the parties is terminated upon acceptance by the plaintiff of a bona fide offer to purchase the demised premises."

Lessees moved for partial summary judgment that the lease was not terminated by failure of lessees to purchase the property under the right of first refusal clause of the lease.

The Trial Judge entered a partial summary judgment holding:

... 2. The Right of First Refusal provision of the Addendum to Lease Agreement is unambiguous.

3. That provision provides in pertinent part: "Upon Lessee's failure to meet such bona fide offer within 60 days after notice thereof from the Lessor, the Lessor shall

be free to sell the premises or portion thereof to such third person in accordance with the terms and conditions of his offer."

4. Under the unambiguous language of this Right of First Refusal provision, it is not the mere making of an offer to purchase the premises conditioned upon termination of the lease which would terminate the defendants'/lessees' leasehold interest. Rather, it is the consummation of a sale in accordance with the terms and conditions of such an offer, after the defendants/lessees have declined to exercise their right of first refusal, which would serve to terminate their leasehold interest. In the event such a sale is consummated, defendants'/lessees' leasehold interest would terminate. In the event such a sale is not consummated, the defendants'/lessees' leasehold interest would not terminate and would remain in full force and effect.

The only issue on appeal is the correctness of the ruling of the partial judgment of the Trial Court.

Ordinarily, a sale of leased premises does not release the tenant from his obligation or deprive him of his leasehold. *Hughes v. Donlon*, 149 Tenn. 506, 261 S.W. 960, 35 A.L.R. 506.

■ In the absence of a peculiar provision in the lease, the holder of an enforceable leasehold interest has an unquestioned right to attorn, or perform the duties of the lessee to the purchaser of the property as lessor, and to continue to occupy the premises under the terms of the lease. 51 C.J.S. Landlord and Tenant § 22, p. 53 *et seq.*

■ Careful scrutiny of the original lease fails to disclose any provision therein which would give the faintest hint that it would be terminated by the sale of the property by the lessor or the failure of the lessee to purchase or offer to purchase the property.

An equally painstaking examination of the "Addendum to Lease Agreement" produces the same negative result. On the contrary, the whole import of this instrument is that the lessees desire to and will make improvements on the property and wish to perpetuate their use of it.

Paragraph IV of the Addendum, quoted above, is nothing more or less than an opportunity to the lessees to purchase the property, if it becomes available for purchase, either to avoid payment of rent, or to satisfy their normal desire to have permanent occupancy of the land which they proposed to improve. The reason for the sentence:

> In the event of a sale of subject property, an appraisal will be made by both lessor and lessee,

is not apparent, but it is not inconsistent with the intent of lessees to acquire title to the property for the above reasons.

Plaintiff's only support for her position is that one of the "terms" of the offer of the third party was termination of the lease. Plaintiff insists that, in order to comply with the requirement of Paragraph IV to "meet such *bona fide* offer," lessees must "terminate the lease." This Court cannot agree.

The requirement of paragraph IV is that the lessees offer whatever the third party has offered in terms of price and terms of payment. It does not require the lessees to produce that which the third party has not offered to produce. The provision of the third party offer requiring termination of the lease did not require the third party to terminate the lease. This was a condition to be performed by the offeree, the lessor. Of course, this could not be done by the lessor without some legal ground.

Another reason why plaintiff's argument cannot be accepted is that there is no evidence that the parties had a meeting of the minds upon the subject of allowing their contract to be subject to the whims of others, and nothing in the documents evidence such a meeting of minds or unity of intent.

No published Tennessee opinion has dealt with this situation, but similar cases have been decided in other states.

In *Eaton v. Fisk*, 584 N.Y.S.2d 280; 154 Misc.2d 266 (1992), plaintiff leased a strip of lakeshore to defendants for the duration of defendant's lives. Tenants were to build a dock on the premises in lieu of the first five years rent after which they were to pay $600

per year. The lease contained the following provision:

> Should the landlord, during the lease term, elect to sell all or any portion of the leased premises, ... any tenant herein shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer. Upon the tenants failure to meet such bona fide offer ... the landlord shall be free to sell the premises ... in accordance with the terms of said offer.

The landlord received an offer conditional upon the termination of the lease to defendants, who declined to meet the offer. The landlord brought action to terminate the lease and evict the tenants. After citing a number of authorities on both sides of the issue, the New York Court held:

> It does not seem reasonable that the language of the lease would allow the plaintiff, by means of a unilateral agreement with a third party, to arguably terminate the defendants' leasehold rights immediately after the construction of the dock, or conversely, for the defendants to have the unilateral right to terminate a lease upon a mere refusal to exercise an option to purchase the premises. Such a construction of the clause would appear to fly in the face of the contractual rights and obligations of each party.

> The plaintiff argues that the words "in accordance with the terms and conditions of his offer" have particular significance in that, since the proposed purchaser specifically provided in his offer that it was subject to termination of the lease, the defendants are thereby bound. However, it is not reasonable to assume that a non-contractual party can, by such language, interfere with the defendants' contractual rights under the lease.

> The court finds that the language in the disputed clause is unambiguous, and further finds that the refusal of the defendants to exercise their right to purchase does not terminate their leasehold interest in the premises.

*Eaton,* 584 N.Y.S.2d at 281.

*Sexton v. Nelson,* 228 Cal.App.2d 248, 39 Cal.Rptr. 407 (1964) was an action for declaratory judgment upon several disputes arising under a lease. Included in the opinion of the Appellate Court is the following:

> Plaintiff did not appeal from the judgment but, nevertheless, contends that the trial court erred in concluding that the lease was not terminated upon the failure of defendant to exercise the option to purchase the leased premises, the terms of which heretofore have been set forth; that, under the undisputed evidence and law in the premises, the lease terminated at the time plaintiff had an opportunity to sell the leased premises and the defendant, after notice of this fact, did not exercise his option to purchase; and, for this reason, the judgment declaring the lease terminated as of May 4, 1962 should be sustained.

> As heretofore noted, the plaintiff's contention is based upon the decision in *Garetson v. Hester,* 57 Cal.App.2d 39, 133 P.2d 863. However, the facts in the cited case are not analogous to those in the instant case and the decision therein is not applicable here. The option provision in the instant lease merely gave the lessee a first option to purchase in the event the lessors were able to sell "any part" of the ranch. It did not require the lessee to purchase, nor provide, expressly or by implication, that the lease should terminate upon a sale to another. The contention in question is without merit.

*Sexton,* 39 Cal.Rptr., at 416.

In *Golden Spread Oil, Inc. v. American Petrofina Co. of Texas,* Tex.Civ.App.1968, 431 S.W.2d 50, plaintiff-lessor sued to terminate a filling station lease because lessee had failed to exercise an option under the lease to purchase on the same terms as a third party. The Appellate Court affirmed dismissal and said:

> A lease will be most strongly construed against the lessor. *Sirtex Oil Industries, Inc. v. Erigan,* 403 S.W.2d 784 (Sup.Ct.) and the many cases there cited. Where a lease contract is written in plain, clear and unambiguous language its construction is a question to be decided by the court and not by a jury. *Weil v. Ann Lewis Shops, Inc.,* Tex.Civ.App., 281 S.W.2d 651 (writ

ref'd). It is stated in *G.C. Murphy Co. v. Lack,* Tex.Civ.App., 404 S.W.2d 853 (n.r.e.) as follows:

> "The courts do not favor forfeitures and unless compelled to do so by language that will admit to no other construction, forfeiture will not be enforced. The law abhors a forfeiture. [Citing authorities]....
>
> Equitable relief will not be granted in declaring a forfeiture, for only the plain language of the contract will permit such drastic relief."

Appellee herein certainly had a lease upon the property here involved for a term of 15 years with the exclusive right to purchase if he desired to do so, but was under no obligation to purchase if he did not care to do so. That was nothing more than a privilege granted to the appellee. There was nothing in the lease concerning the cancellation of the lease in case of a sale to a third party. We think the lease is plain, clear and unambiguous and the trial court correctly construed the full meaning of the lease contract....

*Golden Spread Oil,* 431 S.W.2d, at 52, 53.

In *Garetson v. Hester,* 57 Cal.App.2d 39, 133 P.2d 863 (1943), mentioned above, the opinion of the Court states:

> ... It further provided, and *this provision is an important element of the controversy* in this action, as follows:
>
> "It is mutually understood and agreed that *the property covered by this lease is subject to sale;* however, the lessor agrees that in the event of an offer to purchase that lessee is to be given first opportunity to buy." (Emphasis supplied.)

The owner received an offer to buy conditioned on cancellation of the lease and sued for termination when lessee would not exercise his option.

The Appellate Court said:

> The issue involved on this appeal is whether or not the parties to the leases intended by the language used that the leases should be terminated when an offer of purchase was received and the lessee refused to take advantage of the option and purchase the property at the price named in the offer.... The lease clearly provided, and it is clear that the parties had in mind the fact that the property was "subject to sale," at all times. It was not the sale which was to terminate the leases, but a bona fide "offer to purchase" and the lessee was to be given the first opportunity to buy when such an offer was made.... Obviously, the property was subject to sale without the insertion of any such clause. The lessor at anytime had the right to sell the property subject, of course, to the lease, and the effect of the sale would have been merely to substitute the vendee to all of the rights of the original lessor. *Upton v. Toth,* 36 Cal.App.2d 679, 684, 98 P.2d 515. The clause must, therefore, have an important intended meaning. The placing of the option in this clause indicated very clearly that it was the intention of the parties, and insisted upon by the lessees, the appellants herein, that the lessees be protected in the event of the sale and be given the first opportunity to purchase. If it was not intended by the parties that a bona fide offer to purchase with a subsequent refusal by lessees to purchase should terminate the leases, there would have been no occasion whatsoever for this sort of an option. If the purpose of the clause was merely to grant an option to the lessees to buy the property during the life of the leases, it would not have been coupled with the clause reserving the property for sale. The two expressions together clearly indicate that it was intended by all parties that the sale of the land would terminate the leases. In no other way can the presence of the clause be explained. It certainly is a reasonable construction to believe that the parties intended to and did create a condition upon which a termination of the leases could be predicated. [Citing authorities.]

*Garetson,* 133 P.2d, at 865–66.

In *Pipkin v. Connolly,* 167 Mont.2d, 284, 538 P.2d 347 (1975), a farm lease provided:

> "The Landlords [Pipkins] agreed to give Tenants [Connollys] the right to meet any offer to buy the above described real estate and Landlords agree to accept Ten-

ants' offer which does meet an offer, or offers, to buy from any source whatsoever.

" * * *

" * * * The Tenants recognize Landlords' right to sell the above described real estate during the term of this lease or any future lease providing that Tenants be given the rights hereinbefore mentioned."

*Pipkin,* 538 P.2d, at 348–49.

Lessees failed to match an offer by a third party and the landlord sued to terminate the lease.

The Appellate Court terminated the lease and said:

> The lease was drawn by the attorney for Connollys. The terms of the lease when ambiguous will be construed most strongly against him whose words they are. *Bickford v. Kirwin,* 30 Mont. 1., 75 P. 518.

> The lease clause allowing the sale of the farmland and giving lessees the right of first refusal is, at best, incomplete as it relates to the problem here. If all Pipkins wanted to do was to be able to sell their farmland, subject to the leasehold, there would have been no need for the clause. Connollys stated they included the clause because Pipkins demanded it, even though in their opinion it was not necessary....

In *Lunke v. Egeland,* 46 Mont. 403, 410, 128 P. 610, 612, while construing an agricultural lease which contained additional elements, this Court did not reach the problem of the effect of a clause giving the lessor the right to sell and the lessee the right of first refusal. The Court held:

> "There was no necessity of reserving the right to sell if such sale was not to affect the lease. [Lessor] had such right in any event."

The California Supreme Court in *Garetson v. Hester,* 57 Cal.App.2d 39, 133 P.2d 863, 864, 865, construed *this language of the lease involved there*:

> " 'It is mutually understood and agreed that *the property covered by this lease is subject to sale;* however, the lessor agrees that in the event of an offer to purchase that lessee is to

be given first opportunity to buy.' " (Emphasis supplied.)

*Pipkin,* 538 P.2d, at 349–50.

This Court agrees with the reasoning of the New York Court in *Eaton v. Fisk,* and the Texas Court in *Golden Spread Oil Inc. v. American Petrofina Co. of Texas, supra,* and has distinguished the holdings of the California Court in *Garetson v. Hester,* and its progeny, *supra* by the fact that the lease in the present case did not contain the words, "the property covered by this lease is subject to sale."

The judgment of the Trial Court is reversed and vacated and the cause is remanded to the Trial Court for entry of an order and proceedings in conformity with this opinion. Costs of this appeal are taxed against the plaintiff-appellee.

Reversed and Remanded.

LEWIS and KOCH, JJ., concur.